[No. 3153.   April 24, 1929.]

STATE ex rel. McFANN v. HATELY,
County Treasurer.

STATE ex rel. REECE v. SAME.

[278 Pac. 206.]

H. S. Bowman, of Santa Fe, and F. A. Burdick and G. W. R. Hoy, both of Farmington, for appellants.

A. M. Edwards, of Santa Fe, and George F. Bruington, of Aztec, for appellee.

## OPINION OF THE COURT

SIMMS, J. Mandamus, wherein relator McFann (in cause No. 1586 below) and relator Reece (cause No. 1587 below) sought to compel the treasurer of San Juan county to execute tax deeds on presentation of certificates of tax sales bought from the county. From judgment for the treasurer, discharging the alternative writ, relators appeal.

On May 23, 1921, the district court of San Juan county entered judgment, in a general tax suit, in favor of the state, for delinquent taxes for the years 1903 to 1919, inclusive, and ordered sale, which was made on June 7, 1921, by the then treasurer of San Juan county. All the certificates concerned here were issued to the county, which in every instance, was the purchaser, and which held all these certificates until April 10, 1925. The certificates were recorded on August 4, 1921, in the office of the county clerk.

On April 10, 1925, relator McFann, through Mr. Hoy, his attorney, requested respondent Hately, as treasurer, to sell him the 11 certificates in question here. On the same day, Mr. Lawson, as agent for the original owner or as agent for the mortgagee concerned in each certificate, requested the treasurer to be allowed to redeem each and all of said certificates. Both parties deposited their money with the treasurer. The testimony is in sharp conflict as to the exact hour and minute when each happening took place. Suffice to say the trial court found that the owner or mortgagee in each certificate tendered the redemption money to the treasurer prior to the sale of the certificates to relator McFann, and that the treasurer accepted the tender in the form made, as and for the redemption of the land involved from the sales previously made. On the same day, the treasurer assigned the certificates to relator, whose agent and attorney, Mr. Hoy, immedi-

ately recorded them and demanded a tax deed in each case. The following day, April 11th, certificates of redemption were issued by the treasurer, who refused to issue the tax deed on any of the certificates.

The first objection made by appellants is that the findings made by the trial court are not sustained by the evidence. An examination of the entire testimony demonstrates that there was abundant testimony to sustain the findings, and they will therefore not be disturbed. In the consolidated causes, the attention of counsel and the court seems to have been largely centered on the McFann Case, where 11 certificates were involved, as against the Reece Case, which involved only one. Technically speaking, the court's refusal to find that Reece purchased his certificate on April 13th, and that the treasurer issued a redemption certificate on May 8th following, which appears by the undisputed testimony, may have been erroneous, but the error, if any, was harmless for the reason that, if the court had made the findings of fact requested by Reece on that point, the result here would not be changed.

Appellants contend that the treasurer had no right to permit the original owner of the land, or the lienholder, to redeem after the expiration of the statutory redemption period, and cite State ex rel. Ols v. Romero, 25 N. M. 292, 181 P. 435. In that case, the rights of a third party had intervened before the owner attempted to redeem after the statutory period had expired. There, the purchaser of the certificate had made and completed his purchase almost a year before the attempted redemption. Here, the trial court found that the owner or lienholder had tendered sufficient money to redeem, and such tender had been accepted while San Juan county was still the owner of all the certificates involved in the McFann Case, and before the relator's offer to purchase the certificates had been accepted by the treasurer.

The law favors redemption. Black on Tax Titles (2d Ed.) par. 348.

The county treasurer, as the officer and agent of the state, had the right to accept from the original owner or lienholder, the redemption money prior to the time that

any third person's rights intervened and while the county held the certificates. Black on Tax Titles (2d Ed.) par. 354; 37 Cyc. "Taxation," p. 1392, and note 47. In discussing the question of the right of the collecting officials to waive the expiration of the statutory redemption period, the Supreme Court of Pennsylvania, in the case of Kunes v. McCloskey, 115 Pa. at page 467, 9 A. 86, said:

"The Acts authorizing sales of land by the commissioners or treasurer, are laws for the collection of taxes, and not for the confiscation of the property of the citizen, who, from any reason, may be unable to pay them when due. It would be beneath the dignity of a great commonwealth to seek to make gain out of the misfortunes of her citizens. Hence we have a provision for redemption in case of both treasurer's and commissioners' sale. During the period allowed for redemption the equitable title is in the owner; the legal title is in the treasurer or commissioners, as the case may be, as security for the unpaid taxes and costs. After the five years have elapsed, in cases of sales by the commissioners, the owner loses his legal right to redeem. This is not because his equity entirely ceases, but because there must be a time certain when the commissioners may proceed, with or without the consent of the owner, to collect the taxes due. But an equity, not enforceable it is true, remains in the owner, sufficient to warrant the commissioners in permitting redemption at any time before a public sale to other parties, as prescribed by Act of Assembly."

Appellants and appellee differ sharply as to whether or not the law of redemption, applicable to the certificates in question here, is the law of 1921 or the laws of the various years for which the taxes involved were delinquent. McFann's case involves certificates for delinquent taxes for the years as follows: 3 for 1915, 1 for 1916, 4 for 1917, 2 or 1918, and 1 for 1919. The court's decree ordering sale of lands involved in them all was made on May 21, 1921, and the sales were all made on June 7, 1921. All certificates were recorded in the county clerk's office August 4, 1921, and redemption was made on April 10, 1925. The Reece case differs somewhat in its facts, and will be hereinafter separately discussed. Regardless of whether the period of redemption is to be computed under the law of 1915, 1917, 1921, or 1925, it is not necessary for us to discuss this feature of the matter, for the reason that none of the acts mentioned forbids the treasurer to accept the redemption money from any party in interest, where the county was the purchaser and owner of the certificates and no third person's rights had intervened.

■ We fail to see any ground upon which either of the relators can complain of the treasurers action. One who has no interest in real estate, but desires to purchase a tax title thereon, cannot complain because the county treasurer permits the original owner or lienholder to redeem after the expiration of the statutory period of redemption, but before such prospective purchaser has acquired any right in the certificate.

■ In the Reece case it appears that the certificate was sold to Reece, April 13, 1925, and certificate of redemption was not issued until May·8th following. The testimony goes to show, however, and the court found, that, in the fall of 1924, the owner, Duggan, and the lienholder, Durango Trust Company, had applied to the then treasurer, Mr. Lawson, to give them the amount of the taxes, interest, penalties, and costs on a certain list of lands furnished, which included the land covered by the Reece certificate, so that they might pay and redeem the same from all tax sales for years prior to 1921. Lawson testified that he was unable to do this, even by working nights and having his wife help him in his office, for the reason that the tracts of land were too numerous for him, as treasurer, to find time to hunt each piece up for the 17 years covered by the court's order of May 21, 1921. The testimony shows that there were hundreds, and one witness estimated about 2,000 certificates in the office. It is manifest that the taxpayer, offering to pay and furnishing the treasurer a list of lands involved, had a right, under such circumstances, to wait, with what patience he could command, the furnishing of this information. It further appears that as soon as Lawson went out of office, January 14, 1925, and respondent took the office over, Duggan and the trust company hired ·Lawson, because of his familiarity with the books, to start the job which the new treasurer, respondent, evidently had not up to that time been able to do. In this the owner and lienholder were diligent. Lawson had been working two weeks on the land list, tracing out each tract for the years involved, at the expense of Duggan and the trust company, when Reece bought the certificate. Respondent explained his action in selling this and the other certificates

by saying that he thought, the right of redemption was secure in the owners and that, in his opinion, notice prior to acquisition of tax deed, as provided by the law of 1921, was required.

It seems only fair to call attention to the fact that respondent had been treasurer for only four months when this controversy arose. He is not responsible for the condition of tax matters running back over a period of 17 years. The congestion in his office was not of his making. But neither was Duggan nor Durango Trust Company responsible for it. It is common knowledge that it is sufficiently difficult for the state to collect its tax money with the best of office and accounting practice; and where, as here, the delinquencies are piled under such a mass of paper work and detail, it is difficult indeed to straighten it out. In discussing what the duty of the public officer and what the duty of the taxpayer under such circumstances may be, Judge Agnew, of the Supreme Court of Pennsylvania, in Dietrick v. Mason, 57 Pa. 40, said:

"The Treasurer is the legal custodian of the books •and the entries of the taxes and costs containing the information necessary to know the sum" necessary "to be tendered. This information it is his duty to give, and he cannot even simply lay the books before the owner and compel him to search them for himself. The knowledge of the latter may not be adequate to find what he needs. It is therefore the duty of the treasurer to state the taxes and costs to be paid, and if he misstates the. amount, his miscalculation or omission shall not defeat the redemption."

Redemption cannot be prevented by the fault or mistake of the collecting officer whose duty it is to furnish to the taxpayer the requisite information. Black on Tax Titles (2d Ed.) par. 362; 37 Cyc. "Taxation," 1418.

We do not wish to be understood as holding that the treasurer has the power to extend the period of redemption by oral agreement with a taxpayer, nor to waive the utmost diligence and readiness to pay, required by law; we simply say that in this case the trial court was right in finding that the taxpayer was diligent, and that the treasurer was not able, for reasons over which he had no control, to give the necessary information to enable the taxpayer to redeem, which he stood ready, able, and willing to do. Under such circumstances, the law will treat

the redemption as having been made in the fall of 1924, in this case, when it was first offered, and long prior to the date on which relator bought the certificate, to wit, April 13, 1925. It follows that the treasurer was not authorized to sell to Reece the certificate involved in his case, as the same was previously invalidated by the offer of the owner to redeem.

Finding no error in either cause, it follows that the judgment of the trial court is right and should be affirmed, and it is so ordered.

PARKER and CATRON, JJ., concur.

BICKLEY, C. J., and WATSON, J., did not participate.