267 P.2d 134

**BROWN   v.   GURLEY.**

**McKAY et ux.   v.   BROWN et al.**

No. 5647.

Supreme Court of New Mexico.

Feb. 16, 1954.

Dudley Cornell, Albuquerque, for John F. Brown.

F. A. Catron, Santa Fe, for Horace F. McKay, Jr., and Elmyra Kay McKay, his wife.

Dudley Cornell, Albuquerque, for John F. Brown.

H. J. Guthmann, Santa Fe, for A. C. Gurley.

McGHEE, Chief Justice.

John F. Brown filed suit against the defendants to quiet title to the southwest quarter of section 14 and the north half of the northwest quarter of section 23, in township 24 north, of range 2 west, N.M. P.M., in Rio Arriba county, which had been deeded to Brown and his wife, Ola Lee Brown, on January 15, 1937, by William T. Bookhamer and wife.

The defendants McKay answered denying the title of Brown and by way of counterclaim asserted they were the owners in fee simple of the southwest quarter of section 14 by virtue of a tax deed from the State Tax Commission for the last half of 1937 taxes, tax sale having been made on January 23, 1942.

The defendant Gurley answered denying Brown's title and by cross-complaint against John F. Brown sought to quiet title in himself to the property described in the complaint.

John F. Brown and wife, Ola Lee Brown, answered the counterclaim of the McKays, setting up various defenses against the tax deed and pleading constructive fraud on the part of the treasurer. Brown also joined issue on the cross-complaint of Gurley.

The Browns and Gurley made common cause in their attack on the McKay's tax title, and as that issue was first tried and the tax deed held void, we will first dispose of that issue.

The attorney for appellants McKay has so succinctly summarized the findings of fact and conclusions of law upon which the tax deed was held void, we copy them:

"That the property with which we are concerned, namely, the SW¼ of Sec. 14 T. 14 N. R. 2 W. was accurately assessed to Wm. T. Bookhamer for the year 1937; that the first half of the taxes was paid and receipt No. 245 issued therefor November 23, 1937; that the assessment bears the notation 'Tax Sale Cert. 2228 1–20–42'.·

"That a sale of property in Rio Arriba County on which taxes were delinquent for 1937, and other years, was held in 1942, beginning on January 19th, and that included in the properties offered for sale was the property here involved.

"That no other bidders appearing, the property here involved was sold to the State of New Mexico by operation of law on the 5th day of the sale, namely January 23, 1942.

"Then, following findings relative to the issuance of tax sale certificates and tax deeds to the state, the court found:

"That in June, 1944, Brown made a bona fida effort to redeem and/or repurchase from the County Treasurer and from the Tax Commission.

"That Brown relied on the representations made to him in June, 1944, and believed that he had then redeemed and/or repurchased the property.

"That in June, 1944, Brown attempted to repurchase from the State but the Tax Commission had no record of the property having been deeded to the State.

"That at all times material the County Treasurer acted in his official capacity and also acted as an agent for the State Tax Commission.

"That Brown in his attempt to redeem and/or repurchase acted with diligence and relied solely upon statements made to him by the County Treasurer and/or Tax Commission.

"That the Tax Commission did not give Brown notice by registered mail as required by Sec. 76–740, N.M.Stats. 1941 Ann.

"The material conclusions of law made by the court on findings relating to the validity of the sale of the property for taxes and of the deed from the Tax Commission to the defendants McKay, are:

"That the property involved was duly sold to the state for delinquent taxes on January 23, 1942.

"That the period for the redemption of the property was 2 years from the date of sale and that no redemption was legally effected within the time limited.

"That the failure of the Treasurer to inform Brown of the assessment in the name of Bookhamer and of tax sale certificate No. 2228, and the failure to permit Brown to pay or redeem, or repurchase, constituted constructive fraud voiding the subsequent tax deed.

"That both the original tax deed from the County Treasurer to the state and the Correction Deed given in lieu thereof are void because of the constructive fraud of the Treasurer in failing to permit Brown to redeem and pay the delinquent taxes prior to the issuance of the deeds.

"That the deed dated November 28, 1949, from the Tax Commission to the McKays is void because of the constructive fraud of the Tax Commission in failing, refusing and neglecting to permit Brown to repurchase.

"That the failure of the Treasurer to issue a sales certificate until July 10, 1946 (the sale having been on January 23, 1942), and her then issuing an incorrect certificate, was one of the acts of negligence constituting constructive fraud.

"That the fraud of the Treasurer was imputable to the Tax Commission."

The time for redemption expired two years from the date of sale, or in January, 1944, and according to Brown's testimony he made no inquiry whatever as to the status of his property until in June, 1944, when the treasurer had lost all control or jurisdiction over the sale, as we read the statutes, except to perform the ministerial duty of issuing a tax sale certificate and a deed to the state, having it recorded and then forwarding it to the State Tax Commission. § 76–724, 1941 Comp.

Brown testified he believed he had redeemed the property here involved in June or July, 1944. He made a trip to the office of the State Tax Commission in July, 1944, in connection with his taxes but the record is barren of what he or the lady with whom he talked in that office had to say, so it is left to speculation whether they talked of the property here involved, or whether he asked to be allowed to redeem or repurchase any property which may have been sold for taxes. He was on the witness stand in his behalf, and it is strange he did not tell the conversation which occurred between himself and the employee with whom he talked if such would have helped his case. He was not even questioned on the point.

Brown did receive a paper from the tax commission office on which the following appeared at the time of trial, the upper part of which had previously been torn

off, and which was marked plaintiff's exhibit 6:

"has only been assigned individual— no deed yet executed by Treasurer. Clerk's records could be checked to determine if deed has been executed. Rolls should show if tax deed has been issued to state & number of same."

Brown did not undertake to state what, if anything, preceded the above before the top was torn off.

Brown delivered the paper to then Assistant District Attorney Clancy who took it with him to the county seat of Rio Arriba county the following day. It was stipulated Clancy would testify he made inquiry of the treasurer as to any taxes due on Brown's property, and paid such official $55.61. According to the record the treasurer wrote the following on the paper set out above:

"55.57 Paid
      X     1936
$55.61     1937

Sent Ck

John F. Brown    Lindreth

School Dist 53

SW¼ N½ SW¼
S 14 T. 24 R 2 W

Ck on this"

On the back, in what was said to be Clancy's writing, appeared the following:

"1937 Tax     55 61    Plus Interest
Albert H. Clancy
   Bookhamer    S½ NW¼
            SW¼ Sec. 14 T 24 N rge 2 W"

This exhibit was not offered in evidence but we will consider it in connection with the stipulation as to what Mr. Clancy's testimony would be if he were called to the witness stand.

The record is silent as to whether Mr. Clancy checked the records for evidence of a tax sale. However, the abstract introduced in evidence as to the land here involved as well as other lands assessed in the name of Bookhamer for 1937 taxes, shows the sum, $19.02, due, of which $9.51 was paid and credit for an equal amount given because of tax sale certificate No. 2228, which is the number of the certificate later issued by the treasurer at the request of the tax commission, and on which the tax deed was based.

It should be kept in mind the visit of Brown to the tax commission office, as well as the visit of Clancy to Tierra Amarilla and his payment of taxes was in July,

1944, some six months after the time for redemption had expired.

We do not find any testimony to support the finding of the trial court that Brown moved with diligence to pay his taxes on the property here involved for the last half of 1937, except after the time for redemption had expired. He knew the property was assessed to Bookhamer for 1937, and although he had obtained a deed from Bookhamer in January, 1937, he did not file such deed until in November following, just one day before he paid the taxes on the land here involved for the first half of that year. He made no effort thereafter to pay them until in June, 1944.

It is true the treasurer did not issue a tax sale certificate and deed to the state until in 1946, and that the description in them was erroneous, but a new certificate and deed were issued at the request of the tax commission correctly describing the property. It was foreseen by the legislature there would be cases where the treasurer would neglect to issue certificates and deeds, for it is provided by § 76–718, 1941 Comp.:

"Tax sale certificates may be issued, sold or assigned and tax deeds procured by the holders of tax sale certificates at any time within ten (10) years after the tax upon the basis of which such tax certificates were issued became delinquent, and not afterwards; * * *."

Such delay does not provide a defense to the tax deed. Foster v. Bennett, 1940, 44 N.M. 618, 107 P.2d 321.

The power of the treasurer to execute a tax deed is not exhausted until a deed is made in compliance with law. Hood v. Bond, 1938, 42 N.M. 295, 77 P.2d 180.

It is clearly established by the record that Brown made no inquiry about the status of taxes on the land here involved until after the time for redemption had expired, and at that time the title had vested in the state by operation of law. He did have time to effect a repurchase or redemption by making application therefor to the State Tax Commission, but, as above stated, there is not a scintilla of evidence in the record as to what he said at the tax commission. It may be surmised from what was written on plaintiff's exhibit 6 that he asked if the commission had a tax deed to the property, but not more. If Brown had made application for repurchase or redemption surely he would have so testified when he told of going to that office and having a conversation with a commission employee. The testimony by which it is attempted to establish constructive fraud on the part of the tax commission falls far short of being clear and convincing, which is the standard we

established for it in Lile v. Lodewick, 1949, 53 N.M. 511, 212 P.2d 422.

■ The treasurer did not have authority to sell Brown the land after the time for redemption had expired. Ross v. Daniel, 1949, 53 N.M. 70, 201 P.2d 993; Werner v. Garcia, 1953, 57 N.M. 249, 257 P.2d 929. So an application if made by Brown to such official availed nothing.

■ The trial court found the treasurer was the agent of the State Tax Commission and that when the former gave Brown erroneous information as to the status of his taxes after the time for redemption had expired he committed constructive fraud, and that such was thereby imputable to the commission. We find nothing in the statutes or decisions sustaining this conclusion. The commission, it is true, has a limited supervision over the treasurer in the sale of property for taxes and the issuance of tax sale certificates, but we find nothing to sustain the claim such official is the agent of the tax commission so as to bind it by statements he may make as to tax status of property theretofore sold where the time for redemption has expired.

Brown and Gurley would have us revive the doctrine of State ex rel. McFann v. Hately, 1929, 34 N.M. 86, 278 P. 206, and hold as no individual had purchased the property in June, 1944, the treasurer had the right to sell it to Brown, and that his statement to the treasurer constituted an offer of purchase or redemption. The legislature has completely changed the statutes and procedure for handling the sale of lands for delinquent taxes where the time for redemption has passed, since such decision, and at the time here involved only the State Tax Commission had such authority. Ross v. Daniel and Werner v. Garcia, supra.

■ The failure of the treasurer to send notice the property had been sold for taxes, and of the tax commission to advise of the sale and of the preferential right of redemption or repurchase were at most irregularities which were covered by the curative provisions of our statute. §§ 76–720 and 76–726, 1941 Comp.

The McKays made proper objections to the material adverse findings made by the trial court and have adequately presented them here and their claims of error in that regard are sustained.

■ The land was subject to taxation, the taxes were not paid and Brown sat idly by until the period of redemption had expired, and there was no fraud of any kind practiced on him between the time of assessment and the expiration of the period of redemption. In addition, no fraud on the part of the State Tax Commission was pleaded by the Browns or Gurley or established by the evidence, although it was freely pleaded as to the clerk.

Other minor matters are set up as constructive fraud on the part of the treasurer but they are without merit.

The McKays are entitled to a decree quieting title to the land purchased by them from the State Tax Commission against the Browns and Gurley.

■ The record in this case presents an unusual situation as to the issues between Brown and Gurley. The property was deeded to Brown and his wife, Ola Lee Brown, in 1937, and under the provisions of § 65–401, 1941 Comp., and our opinion in August v. Tillian, 1947, 51 N.M. 74, 178 P.2d 590, the conveyance presumptively vested a one-half interest in the grantees as community property, and the remaining one-half interest in the wife as a tenant in common. The record is void of anything that would destroy the presumption, and the effect of the deed was not in question.

Notwithstanding this fact, Brown alone filed suit to quiet title against the McKays and Gurley. The McKays by cross-complaint brought in Ola Lee Brown as a defendant to their suit to quiet title on the tax deed, but Gurley counterclaimed against Brown alone, and he alone answered Gurley. By requested findings and conclusions the quiet title action of Gurley was converted into an action for specific performance, apparently by consent, or at least without objection in the record, and judgment was rendered against Brown alone, ordering that he execute a deed to Gurley for all of the property involved in this action.

After the case was submitted here, we suggested to the parties that in view of the fact Mrs. Brown presumptively owned one-half of the property as a tenant in common with the community of herself and husband, perhaps she was an indispensable party under our holding in Hugh K. Gale, Post No. 2182 Veterans of Foreign Wars v. Norris, 1949, 53 N.M. 58, 201 P.2d 777, and invited them to file supplemental briefs on the question.

Gurley thereupon filed a motion asking that Mrs. Brown be made a formal party to the Gurley-Brown action, asserting she had so participated in the suit that she was a party, and invoking the provisions of Supreme Court Rule 17 (11), which reads:

"After final judgment rendered in any cause, the court may, in furtherance of justice, and on such terms as may be just, amend in affirmance of such judgment, any record, pleading, process, entry, return or other proceedings in such cause, by adding or striking out the name of a party, or by correcting a mistake in the name of a party or a mistake in any other respect, or by rectifying defects or imperfections in matters of form; and such judgment shall not be reversed or annulled therefor."

The McKays filed a brief opposing the motion, and Brown by letter also registered his opposition, saying as Gurley's cause of action was based upon a contract for the sale of land which was not signed by Mrs. Brown, he could not recover in any event, and that sending the case back in order that she might be made a party would only result in a waste of time and effort.

The trial court found that Brown, his wife and Gurley signed a written contract in April, 1944, whereby the Browns agreed to sell and Gurley agreed to buy the land in question for a small down payment, and annual payments to be made over a period of years; that the contract had not been abandoned by Gurley, although he was delinquent in his payments, and the Browns had not declared a forfeiture.

The finding that Mrs. Brown signed the contract has no support whatever in the record. It had been lost, could not be produced at the trial, and Gurley was allowed to show its contents by oral testimony, but both he and Brown testified Mrs. Brown did not sign it, and in his brief Gurley does not contend she did sign it. According to the testimony, this was a very informal contract drawn by Brown on one sheet of paper and had but little in it beyond the agreement to sell, the description of the land and the terms of payment. Some five months later Brown and wife had a formal contract prepared with forfeiture clauses, provision for

promissory notes maturing annually, with interest, and other clauses usual in these executory contracts for the sale of real estate. Gurley refused to sign this latter contract and it, therefore, never became effective as a sales contract.

At the request of Gurley the trial court found that Gurley's rights rested on the April, 1944, contract (which Mrs. Brown did not sign) and this, plus actual possession by Gurley for a time before leaving the state for several years, is the basis of the judgment. Such being the state of the record, we cannot affirm under § 65-403, 1941 Comp., and our decision in Adams v. Blumenshine, 1922, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369, even if we disregard the failure to make Mrs. Brown a party to the Gurley action, or hold the judgment entered effective only as to the community interest.

In Gurley's answer brief he raises the question of estoppel and ratification against Mrs. Brown, but we find nothing in the record to show such were issues below, and he cannot raise them here for the first time. The great number of New Mexico cases so holding are to be found in the New Mexico Digest under the title, "Appeal and Error," ☞169.

It is true Mrs. Brown joined in making requested findings of fact and conclusions of law, and that they covered the issues between the Browns and McKays on the tax

title, as well as the issues between Brown and Gurley. She was a party to the controversy with the McKays and as such entitled to make requested findings and conclusions. We do not feel this joining of the instruments under one folder by the attorney who prepared them was sufficient to make her a party as against Gurley. She next appears where she joined in the motion for an appeal, but she evidently discovered no judgment had been rendered against her, and she has not filed anything in this court against Gurley.

We are of the opinion Mrs. Brown was an indispensable party to this action. This is an additional reason why the judgment in favor of Gurley against Brown must be reversed.

▆▆▆▆ Brown strongly complains of the action of the court in permitting Gurley to prove over objections the contents of the claimed written contract dated in April, 1944, when he had not attached a copy or filed the original with his pleading, as provided by Rule 9 (k), Rules of Civil Procedure, and had failed to allege the loss of such instrument as provided by § 19–407, 1941 Comp.

As heretofore stated, Gurley's counterclaim or cross-complaint against Brown was in the statutory form of suit to quiet title, and we do not understand one filing such action must do more than comply with the statutory form. Oliver v. Enriquez, 1912,

17 N.M. 206, 124 P. 798. We have never before heard it asserted that one who files such a complaint must attach thereto the instruments upon which he relies to prove his chain of title. The ruling of the trial court was correct when made as the record then stood.

▆▆▆▆ We are also of the opinion that when Brown acquiesced in Gurley changing his action to one for specific performance without raising the question of Gurley's right to do so on his pleading, he waived any right to urge error on account of the matters set out immediately above.

The judgment will be reversed and the cause remanded to the District Court with instructions to vacate the judgment heretofore rendered, and to enter one in favor of the McKays quieting their title to the quarter section claimed by them, and to permit the bringing in of new parties and such amendments as may be necessary for trial of the issues between the Browns and Gurley with proper parties and pleadings. It is so ordered.

SADLER, COMPTON, and LUJAN, JJ., concur.

SEYMOUR, Justice (concurring specially).

I concur in the foregoing opinion except in one respect, immaterial to the conclusion reached.

By the deed to Brown and his wife in 1937, in my opinion Mrs. Brown acquired a one-half interest in the property as a tenant in common. While this statement is in conflict with the case of August v. Tillian, 1947, 51 N.M. 74, 178 P.2d 590, in my judgment the decision in that case is wrong. The only purpose of this special concurrence is an effort to avoid having the rule stated in that case become a rule of property.