HAWAIIAN OCEAN VIEW ESTATES, a Nevada corporation, and EXETER EQUITIES, a limited partnership of the Commonwealth of Massachusetts, Plaintiffs-Appellees, *v.* H. PAUL YATES and SALLY SAFFRON YATES, husband and wife, Defendants-Appellants

NO. 5724

MAY 19, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA
AND KIDWELL, JJ., CIRCUIT JUDGE CHANG
IN PLACE OF MENOR, J., DISQUALIFIED

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiffs-appellees, Hawaiian Ocean View Estates (hereinafter referred to as Hawaiian) and Exeter Equities, brought an action to quiet title to property that had been sold at a tax sale to defendants-appellants, H. Paul Yates and Sally Yates. Hawaiian had been unsuccessful in attempting to redeem the property within the redemption period prescribed by HRS § 246-60 (1968).[1] After the redemption period but before this action was brought, Hawaiian deeded the property to Exeter Equities with the condition and understanding that the former would remain primarily responsible for pursuing the effort to quiet title.

The trial court, sitting without a jury, found that Hawaiian's delay in redeeming the property was occasioned as much by the Yates' breach of their duty to disclose the redemption amount as it was by the manner in which Hawaiian's counsel, Edwin Raney, conducted his client's affairs. But it held that in view of the policy of the State to give

---

[1] HRS § 246-60 states that:

The tax collector or his assistant shall, on payment of the purchase price, make, execute, and deliver all proper conveyances necessary in the premises and the delivery of the conveyances shall vest in the purchaser the title to the property sold; provided, that the deed to the premises shall be recorded within sixty days after the sale; provided further, that the taxpayer may redeem the property sold by payment to the purchaser at the sale, within one year from the date thereof, or if the deed shall not have been recorded within sixty days after the sale, then within one year from the date of the recording of the deed, of the amount paid by the purchaser, together with all costs and expenses which the purchaser was required to pay, including the fee for recording the deed, and in addition thereto, interest on such amount at the rate of twelve per cent a year, but in a case of redemption more than one year after the date of sale by reason of extension of the redemption period on account of late recording of the tax deed, interest shall not be added for the extended redemption period.

the delinquent taxpayer every reasonable opportunity to redeem his property, Hawaiian will be given equitable relief. It allowed Hawaiian to redeem the property.

The Yates appeal contending that the trial court abused its discretion in refusing to put Raney under the witness exclusion rule. They also contend that the trial court erred because they were not responsible for the delay since either they were under no duty to disclose the redemption amount to Hawaiian or Hawaiian's conduct estopped it from relying on their duty.

We affirm.

The trial judge's findings were necessarily lengthy because he considered many facts in balancing the equities. We adopt his recitation of facts which are undisputed on appeal.

On July 10, 1968, the Yates purchased real property at a tax sale for $4,050. A tax deed was executed to them on July 22, 1968 and duly recorded on August 19, 1968.

Unknown to the Yates, the United States District Court for the Southern District of California had authorized a trustee in bankruptcy to convey the same property to Hawaiian from Hawaiian Kona Estates, Inc. (hereinafter referred to as Kona Estates). Kona Estates was the *alter ego* of the bankrupts and the delinquent taxpayer of record when the Yates purchased the property. The trustee executed a deed on May 7, 1968, but it was not recorded until August 6, 1968.

Hawaiian discovered the tax deed to the Yates. After being apprised by the Hilo tax office of the procedure for redemption and the price the Yates had paid for the property, Raney wrote to the Yates on December 19, 1968. He informed them of Hawaiian's intent to redeem and told them that "you should consider this [letter] as a demand for the amount we are required to pay you for the redemption." The Yates received this letter but failed to reply. Raney again wrote the Yates on January 13, 1969 asking for a reply to his December 19th letter. After receipt, the Yates again failed to reply. On February 12, 1969, Raney wrote to the Hilo tax office asking it to advise him of the amount necessary to redeem and the method by which he could post the amount. The tax office

was unable to advise him since it was ignorant of the Yates' additional costs and expenses in excess of the $4,050 purchase price. It referred him back to the Yates to effectuate redemption. On February 27, 1969, Raney informed the Yates by letter that:

> In view of your failure to answer our communications, we will proceed to deposit the full amount of the sales price, that is $4,050, in a local bank in your name. [A]nd we will proceed to bring an action of quiet title to the property.
>
> . . . .
>
> We are giving you another opportunity to answer our communications in a final effort to resolve this matter. We would appreciate hearing from you.

The deposit referred to in this letter was never made.

Raney's three letters gave the Yates the impression that he represented Kona Estates and not Hawaiian.

Discussion between Raney and Paul Yates commenced on March 5, 1969. In a telephone conversation Raney informed Yates of the method by which Hawaiian had acquired the property and offered to forward substantiating documents. Furthermore, he sought from Yates a statement of the exact amount necessary for redemption. Yates had already tabulated his costs and expenses, and although he had not computed the interest, it would have been a simple computation. Yates did not disclose the redemption amount to Raney but gave him an estimate of between $4,500 and $5,000. Raney forwarded illegible substantiating documents. On April 21, 1969, Yates informed Raney that the documents were illegible; and when $5,000 plus proof of Hawaiian's right to redeem were furnished, the necessary papers would be signed.[2]

In May 1969, Raney unsuccessfully attempted to contact Yates by telephone on two occasions.

The redemption period expired on July 10, 1969. On July 23, 1969, Raney wrote the Yates mentioning that he had

---

[2] Raney testified that he never received this information, but the trial court found otherwise.

forwarded the requested substantiating documents, and he was still awaiting their response. Despite receipt of the letter, the Yates failed to respond. They received another letter sent by Raney dated August 13, 1969 containing legible copies of the requested substantiating documents.

On November 11, 1969, the Yates' attorney informed Raney that his clients had decided to retain the property.

Hawaiian filed this action on May 6, 1970. With its complaint it deposited the purchase price plus interest from July 1, 1968 to May 6, 1970 and offered to pay other valid costs, interest and expenses. It did not deposit the exact redemption amount because it was never revealed by the Yates.

I

SHOULD WE REVIEW THE TRIAL COURT'S REFUSAL TO PUT RANEY UNDER THE WITNESS EXCLUSION RULE?[3]

Raney and the Yates were the only witnesses who testified during the trial. After opening statements, Hawaiian's counsel called Paul Yates as an adverse witness. The Yates' counsel requested the trial court to put Raney under the witness exclusion rule, but it refused. The Yates claim that the trial court abused its discretion in refusing their counsel's request.

But the Yates have failed to show any affirmative injury resulting from this denial. Invoking the witness exclusion rule rests within the sound discretion of the trial court. *See Yoshitomi v. Kailua Tavern, Ltd.*, 39 Haw. 93 (1951). In the absence of an affirmative showing of injury, we will not review an act which lay within the sound discretion of the trial court. *See Texas & New Orleans Railroad Company v. Ivey*, 283 S.W.2d 78 (Tex. Ct. App. 1955).

---

[3] The purpose for the order excluding a witness from a courtroom is to prevent him from listening to testimony of other witnesses and then "shaping" or fabricating his testimony accordingly. [Citations omitted.] It would appear that this may not be a very sound reason because there are other ways in which testimonies may be "shaped" or fabricated.
State v. Leong, 51 Haw. 581, 583, 465 P.2d 560, 562 (1970) (footnote omitted).

II

DID THE TRIAL COURT ERR IN HOLDING THAT UNDER HRS § 246-60 THE YATES WERE UNDER A DUTY TO DISCLOSE THE REDEMPTION AMOUNT TO HAWAIIAN?

The trial court held that under HRS § 246-60 the Yates were under a duty to disclose the redemption amount to Hawaiian. The Yates contend that the holding is erroneous.

In support of their contention they argue that under the statute the purchaser has no duty to disclose the redemption amount to the taxpayer when the taxpayer demands disclosure because the statute fails to expressly require disclosure. Since the statute is silent with respect to disclosure, we should initially decide whether the purchaser should have an implicit statutory duty to disclose the redemption amount to the taxpayer.

For the purposes of statutory construction, "the rule is that whatever is necessarily or plainly implied in a statute is as much a part of it as that which is expressed." *Chong Yet You v. Rose,* 23 Haw. 220, 222 (1916) (citations omitted); *accord, Chang v. Meagher,* 40 Haw. 96, 104 (1953). "[A]nd in case of incompleteness or ambiguity of expression the reason and spirit of the statute and the cause which induced the legislature to enact it should be considered in interpreting it." 23 Haw. at 222 (citations omitted).

One of the reasons for the statute is to give the taxpayer the right to redeem his property. He may redeem by paying the purchaser the redemption amount within the redemption period. But the purchaser is the only person who has access to information necessary to calculate the redemption amount. If the purchaser never has a duty to disclose the redemption amount to the taxpayer, he need not disclose it when the taxpayer demands disclosure. Without disclosure of the redemption amount, the taxpayer cannot pay it in order to redeem. Thus, the taxpayer might be precluded from redeeming in a manner unintended by the legislature.

The statute should be liberally construed in the taxpayer's favor, *see e.g.,* 72 Am. Jur. 2d, *State and Local Taxation,*

§ 988 (1974), because it is the policy of this State to give the taxpayer every reasonable opportunity to redeem his property, *cf. Gartner v. Roth,* 26 Cal.2d 184, 157 P.2d 361 (1945) (the California policy); 5A Thompson on Real Property § 2765 (1957) (the general policy).

Consistent with the reason for and the spirit of the statute, the purchaser should have an implicit statutory duty to disclose the redemption amount to the taxpayer. Moreover, precedent from other jurisdictions indicate that the purchaser should have a duty to disclose the redemption amount.

*Reid v. Penfield,* 118 Va. 670, 88 S.E. 61 (1916), is a case with facts similar to the case before this court. In that case an heir of a delinquent taxpayer brought an action to invalidate a tax deed issued pursuant to a tax sale. Carson, counsel for the estate, initially learned of the tax sale on May 20, 1913. Shortly thereafter he sought the information necessary to redeem from S. C. Goggin, the clerk of the county. Goggin informed Carson that his records revealed that the amount necessary to redeem was $46.95. Carson immediately sent a check for that amount to Goggin who in turn forwarded it to the tax sale purchasers. The purchasers refused to accept the check claiming that it had been drawn for an insufficient amount. The Virginia redemption statutes provided that:

> [T]he owner must, in order to redeem, pay not only the amount shown of record to be due, but also must pay any such additional taxes, levies, costs, and charges as the purchaser may have paid since the sale, with interest.

118 Va. at 672, 88 S.E. at 62. Additional costs and charges were known only to the purchasers. These costs and charges could not be paid unless the purchasers disclosed them. The Virginia redemption statutes also provided that:

> [T]he purchaser's tax deed shall be defeated by proof "that the payment or redemption of said real estate was prevented by fraud or *concealment* on the part of the purchaser."

118 Va. at 672, 88 S.E. at 62 (emphasis added). Prior to the expiration of the redemption period, Goggin had repeatedly, but unsuccessfully, sought the information necessary to effectuate redemption from R. E. Reid, one of the

purchasers. In affirming the trial court's decision that the tax deed was void, the court was of the opinion that the purchasers "were engaged in an effort to suppress and conceal information, which they alone possessed, in order to defeate [*sic*] redemption of the land within the time prescribed by law." 118 Va. at 673, 88 S.E. at 62.

The purchasers had a duty to disclose the redemption amount because the Virginia legislature saw the necessity to · expressly include a duty to disclose in Virginia's redemption statutes.

*Gonzales v. Harrington Co.*, 2 N.J. Misc. 311, 126 A. 38 (Ct. of Chancery 1923),[4] is another case similar to the one at bar, but unlike HRS § 246-60, the New Jersey redemption laws required a tax sale purchaser to perfect his title by serving notice to redeem on a prospective redemptioner. The prospective redemptioner would then be required to redeem within sixty days of the date of service. Upon receipt of the notice to redeem, the mortgagee of property sold at a tax sale attempted to ascertain the redemption amount from the tax collector. The collector declined to disclose the amount or to accept money from him and referred him to the purchaser. The purchaser quoted him an excessive sum and refused to meet with him to determine the correct amount due. The mortgagee brought an action to compel the purchaser to convey the property to him. The court noted that the true amount could only be determined by the purchaser. Although no money was ever offered to the purchaser during the redemption period, the court allowed the mortgagee to redeem.

Although duty was not specifically mentioned in *Gonzales,* we believe that the purchaser had a duty to disclose the redemption amount to the mortgagee. Although that case involved affirmative misrepresentation and the case before this court concerns the refusal to disclose the redemption amount, we find this distinction inapposite. It is our opinion that the *Gonzales* court would have held similarly if the

---

[4] A case decided in a similar manner was Gonzales v. Harrington Co., 2 N.J. Misc. 316, 126 A. 40 (Ct. of Chancery 1923).

purchaser had refused to disclose the redemption amount when he alone had access to the amount and could preclude redemption by non-disclosure.

Where redemption had to be effected with the county treasurer, the court in *State ex rel. McFann v. Hately,* 34 N.M. 86, ___, 278 P. 206, 208 (1929), stated: "Redemption cannot be prevented by the fault or mistake of the collecting officer whose duty it is to furnish to the taxpayer the requisite information. Black on Tax Titles (2d Ed.) par. 362; 37 Cyc. 'Taxation,' 1418." *Accord, Gammill v. Mann,* 41 N.M. 552. 554, 72 P.2d 12, 13-14 (1937).[5]

The county treasurer had a duty to disclose the redemption amount to the taxpayer when the property had to be redeemed through him. Since the taxpayer must know the redemption amount to pay it, irrespective of whom he redeems through, an identical duty should be imposed upon the purchaser when the property must be redeemed through him.

We conclude that the purchaser should have an implicit statutory duty to disclose the redemption amount to the taxpayer.

Alternatively, the Yates argue that, even if the purchaser should have an implicit statutory duty to disclose the redemption amount to the taxpayer, the duty does not arise until two conditions have been satisfied. They claim that the two conditions precedent are the taxpayer's tender of amounts spent by the purchaser that the taxpayer knows or should know of and the taxpayer's establishment of his right to redeem.

It is also the policy of this State to make the redeeming taxpayer's burdens as light as possible. *Cf. Anglo California*

---

[5] *See* Ponder v. Ebey, 194 Okla. 407, 410, 152 P.2d 268, 272 (1944) (*semble*) in which the court stated:

The further general rule is that it is the duty of the proper officers to impart correct information to those seeking to redeem from tax sales and the owner does not lose his right to redeem by permitting the appointed time to elapse or paying less than the proper amount, or otherwise failing to comply with the directions of the statute when this was caused by the fraud or inability of the officer to furnish necessary information or by his mistake, negligence, or misinformation, or by misleading advice given by him. 61 C.J. 1290.

*Nat. Bank v. Leland*, 9 Cal.2d 347, 70 P.2d 937 (1937); *Lachmund v. Johnson*, 47 Cal. App. 2d 377, 117 P.2d 920 (D. Ct. of App. 1941) (both cases stating California's policy).

None of the previously cited cases concerning the purchaser's duty to disclose specifically recognized the merit of the Yates' partial tender argument, and they have failed to call our attention to any authority in support of it. We agree with the trial court's characterization of this argument as requiring the cart to be placed before the horse. Any requirement that the taxpayer tender or pay the redemption amount in installments is additionally burdensome.

Likewise, the taxpayer's exercise of his right to redeem is additionally burdensome if he is required to establish his right to redeem as a condition precedent to any duty to disclose that the purchaser should have. What possible detriment would the purchaser suffer by disclosing the redemption amount before the taxpayer establishes his right to redeem? We perceive none. If the purchaser doubts the taxpayer's right to redeem after he has disclosed the redemption amount, he may demand proof of the taxpayer's right to redeem before he delivers a quitclaim deed.

Consistent with the policy of this State, we conclude that neither the tender of amounts spent by the purchaser that the taxpayer knows or should know of nor the taxpayer's establishment of his right to redeem is a condition precedent to any duty to disclose that the purchaser should have.

We further conclude that the statute necessarily implies that the purchaser has a duty to disclose the redemption amount to the taxpayer when the taxpayer demands disclosure. Therefore, the trial court did not err in holding that under HRS § 246-60 the Yates were under a duty to disclose the redemption amount to Hawaiian.

III

DID THE TRIAL COURT ERR IN REFUSING TO HOLD THAT HAWAIIAN'S CONDUCT ESTOPPED IT FROM RELYING ON THE YATES' DUTY TO DISCLOSE?

The Yates claimed that the failure of Hawaiian to produce timely proof of its redemptive rights and its misrepresentation regarding the deposit of the $4,050 estopped it from relying on their duty to disclose. The trial court refused to hold as such. They now contend that this refusal was erroneous.

Even assuming but not deciding that the elements of estoppel were present, the Yates could not have claimed the benefit of an estoppel. "Since the whole doctrine [of estoppel] is a creature of equity and governed by equitable principles, it necessarily follows that the party who claims the benefit of an estoppel must not only have been free from fraud in the transaction, but must have acted with good faith and reasonable diligence; otherwise no equity will arise in his favor." 3 Pomeroy's Equity Jurisprudence § 813 (5th ed. 1941) (footnote omitted); *Bachrodt Realty Corp. v. Walker*, 237 Ga. 696, 697, 229 S.E.2d 455, 457 (1976). Since the Yates had a duty to disclose the redemption amount, they were neither acting in good faith nor with reasonable diligence in disregarding Hawaiian's many inquiries about the redemption amount. The trial court did not err in refusing to hold that Hawaiian's conduct estopped it from relying on the Yates' duty to disclose.

Further discussion is necessary lest we leave the impression that certain equitable maxims were disregarded by the trial court.

The maxim, in pari delicto, potior est conditio defendentis, means that "where the wrong of the one party equals that of the other, the defendant is in the stronger position."[6] *Van Antwerp v. Van Antwerp*, 242 Ala. 92, 99, 5 So. 2d 73, 79 (1941). It is well established. 3 Pomeroy's Equity Jurisprudence § 940. The recognized exception to the maxim is that "[e]ven when the parties have been found to be in pari delicto, relief has at times been awarded on the ground that in the particular case public policy has been deemed to be best conserved by that course." *Weaverling v. McLennan*, 116

---

[6] This maxim is a corollary of the maxim, he who comes into equity must come with clean hands.

Neb. 466, 474, 217 N.W. 956, 959 (1928); *accord, Lloyd v. Gutgsell,* 175 Neb. 775, 781, 124 N.W.2d 198, 203 (1963); *see* 3 Pomeroy's Equity Jurisprudence § 941. The maxim and its exception are primarily applicable to the law of contracts, but we believe they have applicability here.

As stated at the outset, the trial court found that each party was in pari delicto with respect to Hawaiian's delay in redeeming. We concur with the trial court's holding that in view of the policy of the State to give the delinquent taxpayer every reasonable opportunity to redeem his property, Hawaiian will be given relief.

Affirmed.

*Louis B. Blissard* for Defendants-Appellants.
*Andrew S. Ono* for Plaintiffs-Appellees.