CHARLES LOUIS ALEXANDER, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 5551

December 31, 1968                    449 P.2d 153

*James D. Santini,* Public Defender, and *Robert N. Peccole,* Chief Deputy Public Defender, Clark County, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, and *Jerry J. Kaufman,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

A jury found Charles Louis Alexander guilty of unlawful possession of narcotics (marijuana). The trial judge rejected

Alexander's testimony that his friend, Stephen Carl Walston, had told Alexander a day and a half before his trial that he (Walston) was the guilty culprit. The trial judge ruled that the testimony was hearsay and self serving. Appellant admits that the testimony is hearsay, but argues that it is admissible because it is a declaration against the penal interest of Walston.

Alexander was observed by two police officers at the hour of 2:30 a.m. on May 26, 1967, walking rapidly alone down a darkened alley which is one-half block north of and parallel with the 1600 block of Fremont Street in Las Vegas. The officers followed Alexander and put their regular car lights and spotlight on him. When they did so, Alexander threw a brown sack and a leather wallet toward a fence which bordered the alley. The officers ordered Alexander to stop and asked him for his identification. He replied that he had none. The officers then asked him why he had thrown his wallet toward the fence. Alexander retrieved it, with the statement that he had inadvertently dropped it. One of the officers picked up the brown sack. He examined the bag. It contained a leafy substance which the officer believed was marijuana. Alexander was then placed under arrest and given the full Miranda warning. However, he elected to remain silent.

Alexander testified at his trial that at the time of his arrest he and his friend, Walston, were attempting to locate Alexander's girl friend so that she might drive Alexander to the Las Vegas airport to catch a 2:15 a.m. plane for Los Angeles, where his wife and baby were living; that they had chosen to travel down the darkened alley rather than on well lighted Fremont Street because he had two outstanding traffic citations, and he was fearful of being recognized on lighted streets. He admitted at his trial that he had thrown down his wallet, but he denied ever seeing the brown sack containing marijuana until his trial.

After Alexander testified, Walston was called by the defendant, and the following occurred:

"STEPHEN CARL WALSTON,

called as witness and was duly sworn.

"DIRECT EXAMINATION

by Mr. Peccole [Chief Deputy Public Defender, Clark County, counsel for Defendant Alexander]:
"Q. Would you state your name?
"A. Stephen Carl Walston.
"Q. Mr. Walston, where do you presently reside?
"A. 2001 East McWilliams, Las Vegas, Nevada.
"Q. What is your present occupation?

"A. I'm in the United States Army.

"Q. Mr. Walston, at this time, prior to asking you any question, I would ask Your Honor that the Court admonish this witness as to his right not to testify in this case and direct the Court's attention specifically to the Fifth Amendment of the United States Constitution and would ask that you advise the witness of his rights.

"COURT: Is there any objection to that request?

"MR. KAUFMAN: No objection, Your Honor.

"COURT: The United States Constitution and the Constitution of the State of Nevada and certain statutes of the State provide that a person cannot be compelled to testify against himself in a criminal action. The term in a criminal action includes any possible action other than the one in which the person is testifying. If you wish to exercise that constitutional and statutory right, you, yourself must assert it by declining to testify on the grounds that the answer might tend to incriminate you.

"MR. PECCOLE: Thank you, Your Honor.

"Mr. Walston, prior to asking you any questions in this matter, I would ask you, was there a conversation had in this court room this morning between the prosecutor, Mr. Kaufman, and yourself?

"A. Yes, there was.

"Q. And in that conversation did he say that if you admitted anything from this stand, that you would be held for a criminal action and that a complaint would be filed against you?

"A. Yes, sir.

"Q. Do you know the defendant in this case?

"A. Yes, I do.

"Q. Were you with Charles Louis Alexander on May 26th, 1967?

"A. I refuse to answer that on the grounds it might incriminate me.

"Q. Did you have the occasion to be with Mr. Alexander in an alleyway [where Alexander was arrested] behind the Salvation Army on that date?

"A. I refuse to answer that too on the grounds it might incriminate me.

"Q. Did you have occasion to see a vehicle enter that evening?

"A. I refuse to answer that on the grounds it might incriminate me.

"Q. Are you here under subpoena, Mr. Walston?

"A. Yes, sir; otherwise I wouldn't be here.

"Q. Mr. Walston, did you, in fact, on May 26th, 1967, around two a.m. in the morning, jump over a fence at the Salvation Army in the alley?

"A. I refuse to answer that on the grounds it might incriminate me.

"Q. Did you, in fact, throw down a packet which has been marked here in this court room as State's Exhibit Number 2?

"A. I refuse to answer that on the grounds it might incriminate me.

"Q. Did you ever have possession of what has been marked as State's Exhibit 2?

"A. I refuse to answer that on the grounds it might incriminate me.

"Mr. Peccole: Your Honor, I have no further questions of this witness."

The defense called Clyde M. Willis, State of Nevada Parole and Probation officer, who testified that he had received a telephone call from a person claiming to be Walston. He could not identify the voice. The trial judge refused any further examination regarding the call until a proper foundation was laid. Defense counsel failed completely to make any offer of proof as to just what was the conversation. From the questions counsel asked which Willis was not permitted to answer, it apparently concerned Walston's admission that he, rather than Alexander, had thrown the sack containing the marijuana.

Next, Alexander was recalled to the stand, and he testified as follows:

## "CHARLES LOUIS ALEXANDER

recalled as a witness:

## "DIRECT EXAMINATION

by Mr. Peccole:

"Q. Mr. Alexander, did you ever have a conversation with Steve Walston regarding this case?

"A. Yes, sir.

"Q. Did Steve Walston admit to you that he had the possession of the narcotics that night and threw it down at the Salvation Army gate?

"* * *

"A. Yes.

"* * *

"Mr. Kaufman: Your Honor, I would object on the basis that this is just another avenue of getting at this inadmissible information.

"Mr. Peccole: Yes, sir; but is it inadmissible?

"* * *

"Q.   Did he, in fact, admit it?

"MR. KAUFMAN:   May we have a ruling of the Court.

"COURT:   I'm overruling your objection, anticipatory of the consequences.

"Q.   Did he, in fact—

"A.   Yes, sir; he did.

"Q.   Did he ever admit to you that he called Mr. Willis of the Parole and Probation Department and told him the story?

"A.   Yes, sir.

"MR. PECCOLE:   I have no further questions."

The trial judge, on motion of the Deputy District Attorney, struck Alexander's testimony on the grounds that it was hearsay, and thus we arrive at the precise issue presented for our consideration on this appeal; namely—Was Walston's hearsay declaration against his penal interest, admissible or not?

Where hearsay evidence is admitted, it is usually because it has a high degree of trustworthiness. Lane v. Pacific Greyhound Lines, 160 P.2d 21 (Cal. 1945); Mayfield v. Fidelity & Cas. Co., 61 P.2d 83 (Cal.App. 1936); 5 Wigmore, Evidence § 1420 (3d ed. 1940). Thus, declarations against pecuniary or proprietary interest are admitted because they are unlikely to be false. 5 Wigmore, supra, §§ 1457–1475. The reason for the exception is the principle of experience that a statement asserting a fact distinctly against ones interest is unlikely to be deliberately false or heedlessly incorrect and is thus sufficiently sanctioned, though oath and cross-examination are wanting.

Not so in the case of declarations against penal interest, where the traditional rule excluding declarations against penal interest was first established by the House of Lords in 1844 in the Sussex Peerage case, 11 Clark & F. 85. Although vigorously criticized by legal writers, the rule in Sussex has become the majority view in the United States. Donnelly v. United States, 228 U.S. 243, 277 (1913).[1] In Donnelly, Mr. Justice Holmes dissented. His dissent is quoted often in those jurisdictions

---

[1]See also Wells v. State, 107 So. 31 (Ala.App. 1926); Tillman v. State, 166 S.W. 582 (Ark. 1914); Moya v. People, 244 P. 69 (Colo. 1926); State v. Mosca, 97 A. 340 (Conn. 1916); Green v. State, 111 S.E. 916 (Ga. 1922); Siple v. State, 57 N.E. 544 (Ind. 1900); Weber v. Chicago, R. I. & P. Ry., 151 N.W. 852 (Iowa 1916); State v. Bailey, 87 P. 189 (Kan. 1906); State v. Jones, 53 So. 959 (La. 1911); Commonwealth v. Sacco, 156 N.E. 57 (Mass. 1927); Mays v. State, 101 N.W. 979 (Neb. 1904); State v. Gonzales, 144 P. 1144 (N.M. 1914); State v. English, 159 S.E. 318 (N.C. 1931); Factor v. State, 229 P. 154 (Okla. 1924); State v. Jennings, 87 P. 524 (Ore. 1906); Cox v. State, 22 S.W.2d 225 (Tenn. 1929); State v. Hunter, 52 P. 247 (Wash. 1898); Buel v. State, 80 N.W. 78 (Wis. 1899).

adopting the minority rule, which admits penal declaration against interest. He wrote in part:

"The confession of Joe Dick, since deceased, that he committed the murder for which the plaintiff in error was tried, coupled with circumstances pointing to its truth, would have a very strong tendency to make any one outside of a court of justice believe that Donnelly did not commit the crime. *I say this, of course, on the supposition that it should be proved that the confession really was made, and that there was no ground for connecting Donnelly with Dick.*" (Emphasis added.)

The very factual situation which Justice Holmes describes in his dissent is present in this case. There is not a scintilla of independent evidence, other than the defendant's statement, placing Walston at the scene of the crime. Indeed, the officers testified that there was no one other than the defendant, Alexander, near the crime scene. At the trial, Walston, Alexander's friend, was called to the stand by Alexander's counsel. Defense counsel requested the trial judge to advise Walston of his constitutional rights to refuse to testify. The trial judge did so. A colloquy followed between defense counsel and Walston, and Walston admitted nothing, invoking his constitutional rights under the Fifth Amendment. He was then excused from the witness stand. Alexander was recalled to the stand and testified that Walston had told him he, rather than Alexander, had possession of the narcotics. The record does not show when or where this conversation occurred, as it is completely lacking in foundation, although on cross-examination Alexander stated Walston had made his statement about a day and a half before his trial.

We have found no case supporting the minority rule, which admitted a declaration against penal interest solely through the mouth of the defendant. And understandably so. In such an instance there is a total absence of the ingredient which sanctions the admissibility of declarations against interest, namely, the strong likelihood that the declarant would not falsely make an incriminating statement which jeopardized his own interest.

Walston's refusal to testify on the grounds that his answer might incriminate him may not be interpreted as any inference of his guilt. The record is void of any such evidence except the self-serving statement of Alexander, which the trial judge ruled was hearsay and inadmissible. We agree.

The judgment of conviction is affirmed.

COLLINS, J., and CRAVEN, D. J., concur.

THOMPSON, C. J., with whom ZENOFF, J. concurs, dissenting:

The majority opinion commits Nevada to an archaic rule of evidence established by the House of Lords in 1884 in the Sussex Peerage Case, 11 Clark & F. 85, and characterized by experts as an historical accident without reason to support it. See: 5 Wigmore, Evidence, 3d, § 2477; McBain, California Evidence Manual § 813. The law reviews question whether the English rule ever had validity. See: 11 Kan.L.Rev. 275 (1962); Wash.& LeeL.Rev. 126 (1959); 61 W.Va.L.Rev. 149 (1959); 28 Journal of Criminal Law and Criminology 760 (1938); 21 Minn.L.Rev. 181 (1936); 10 N.C.L.Rev. 84 (1931). The Model Code of Evidence, rule 509 (1942), rejects it. A significant body of state courts have proclaimed that they will not follow it. People v. Spriggs, 389 P.2d 377 (Cal. 1964); People v. Lettrich, 108 N.E.2d 488 (Ill. 1952); Cameron v. State, 217 S.W.2d 23 (Tex.Cr. 1949); In re Forythes' Estate, 22 N.W.2d 19 (Minn. 1946); Sutter v. Easterly, 189 S.W.2d 284 (Mo. 1945); Brennan v. State, 134 A. 148 (Md.App. 1926). In People v. Spriggs, supra, Justice Traynor articulates the persuasive reasons for California's break with the ancient English rule and those reasons need not here be restated. Nevada should now announce that a declaration against penal interest is admissible as an exception to the rule precluding hearsay evidence since such a declaration is probably trustworthy and reliable.

The out-of-court declarations by Walston against his penal interest, first made to the accused and later to the probation officer, bore directly upon the central issue of guilt and, if believed, would demand an acquittal. Walston told the accused that he, Walston, possessed the marijuana and that it was his. He subsequently telephoned the probation officer and once more made that admission. According to the testimony of the accused, Walston was at the crime scene and threw the package which the police retrieved.

The accused was not allowed to testify to Walston's out-of-court admission since it was hearsay. Testimony from the probation officer also was precluded on that ground, and for the additional reason that a sufficient foundation was not established to identify Walston as the person using the telephone. In each instance the hearsay objection should have been overruled and the testimony received as an admission against the declarant's penal interest. Walston's election to invoke his Fifth Amendment privilege against self-incrimination rendered him "unavailable" as a witness as surely as though he were dead.

Sutter v. Easterly, supra; Band's Refuse Removal, Inc. v. Borough of Fair Lawn, 163 A.2d 465 (N.J. 1960); Morgan, Declarations Against Interest, 5 Vand.L.Rev. 451.

The identification of the other party to a telephone conversation may be shown circumstantially. Positive voice identification by the hearer is not required. King v. State, 80 Nev. 269, 271, 392 P.2d 310 (1964). The circumstances pointing to the identification of Walston as the other party to the telephone conversation with the probation officer are strong. The caller identified himself as Walston. He told the same story to the probation officer that he had previously told the accused. When asked questions on the witness stand relating to his earlier out-of-court declarations against penal interest, he declined to answer since his answers might incriminate him. With these circumstances in the record one must press to conclude that an adequate foundation for that conversation was not established. Indeed, such a conclusion is tantamount to requiring positive voice identification by the hearer—a requirement which Nevada has rejected.

The conviction should be set aside and a new trial ordered.