## STATE OF HAWAII
## *v.* EMMETT CHONG SING LEONG.

### No. 4820.

FEBRUARY 19, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND
CIRCUIT JUDGE OGATA IN PLACE OF KOBAYASHI, J.,
DISQUALIFIED.

582

OPINION OF THE COURT BY ABE, J.

On July 26, 1968, two police officers saw defendant Emmett Leong get into a car driven by Eugene Kim and when the car stopped at an intersection, the police immediately pulled up behind to arrest defendant under warrants of arrest. As one of the officers alighted from the police car, he saw defendant move his right hand, then saw an object fall through the window on the side where defendant was sitting. Defendant was arrested.

The object, when recovered, was found to be a piece of rubber with three gelatin capsules containing heroin. Both defendant and Kim, known by the police as users of heroin, were charged with unlawful possession of narcotics. Later, Kim was released for lack of evidence.

During defendant's trial before a jury, the court refused to allow defense witness Edmund Conchee to testify. Defendant was found guilty of the offense of unlawful possession of narcotics and was sentenced to 10 years' imprisonment. Defendant appealed.

Defendant contends that the trial court's refusal to allow defense witness Edmund Conchee to testify because

of his presence in the courtroom during the trial was prejudicial error.

The record shows that at the inception of the trial the court ordered that:

"... any person in the courtroom who may be a witness in this case must leave the courtroom and wait outside until called to testify. If he stays in the courtroom, then he will not be permitted to testify later on."

After defendant had testified, his counsel called Edmund Conchee to testify. The State objected on the ground that Conchee had been in the courtroom and had heard the testimony of other witnesses. The trial court sustained the objection and refused to permit Conchee to testify, invoking the above-mentioned order.

## I. Order Excluding Witness

The purpose for the order excluding a witness from a courtroom is to prevent him from listening to testimony of other witnesses and then "shaping" or fabricating his testimony accordingly. *United States* v. *Leggett,* 326 F.2d 613 (4th Cir. 1964); *Witt* v. *United States,* 196 F.2d 285 (9th Cir. 1952). It would appear that this may not be a very sound reason because there are other ways in which testimonies may be "shaped" or fabricated.[1] However, even accepting the soundness of the reason for the rule on its face value, we hold that the trial court erred in invoking the order to prevent a defense witness from testifying in this case.

The Hawaii Constitution, Art. I, § 11, provides that: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining wit-

---

[1] *E.g.,* by getting all witnesses together and drilling or rehearsing them; or by informing a witness as to testimony of other witnesses by notes, tape recording or other means.

nesses in his favor. . . ."[2] What right of an accused is protected by the provision? To hold that the provision merely gives an accused the right to the issuance of subpoenas to compel attendance of witnesses who may testify in his favor, but that it does not entitle an accused to the testimony of witnesses so subpoenaed because of their actions or behavior in court, we believe, would make this right hollow and worthless.

The general principle of law is that in construing constitutional provisions guaranteeing fundamental rights, they are to be liberally construed so that the purpose to be attained, or the evil to be remedied, is accomplished.

In *Boyd* v. *United States,* 116 U.S. 616, 634 (1886), the United States Supreme Court held that suits for penalties and forfeitures, though they were civil in form, for violations of the custom revenue law were quasi-criminal in nature and they were to be deemed criminal proceedings. And at pages 634-35 the Court said:

"... a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure — and an unreasonable search and seizure — within the meaning of the Fourth Amendment. Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their

---

2 Our Constitution is patterned after the United States Constitution, Amendment VI. Also, the Sixth Amendment has been held to apply to the states through the Fourteenth Amendment: confrontation of witness, Pointer v. Texas, 380 U.S. 400 (1965) ; assistance of counsel for defense, Gideon v. Wainwright, 372 U.S. 335 (1963) ; compulsory process, Washington v. Texas, 388 U.S. 14 (1967) ; impartial jury, Parker v. Gladden, 385 U.S. 363 (1966) ; speedy trial, Klopfer v. North Carolina, 386 U.S. 213 (1967) ; public trial, Estes v. Texas, 381 U.S. 532 (1965), *rehearing denied,* 382 U.S. 875 (1965).

substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis....*"

Also in *Gouled* v. *United States*, 255 U.S. 298, 304 (1921), the United States Supreme Court said that rights guaranteed by the Fourth and Fifth Amendments were

"... indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen, —the right, to trial by jury, to the writ of *habeas corpus* and to due process of law. It has been repeatedly decided that these Amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers."

We have no doubt that the compulsory process provi-

sion in the Hawaii Constitution, Art. I, § 11, was intended to guarantee an accused the right to have witnesses testify in his favor. Thus, we hold that the trial court erred in refusing to permit a defense witness to testify, under an order excluding witnesses from the courtroom, because by so doing it denied defendant this constitutional right to have witnesses testify in his favor.

In *People* v. *Duane*, 21 Cal. 2d 71, 130 P.2d 123 (1942), the California Supreme Court at page 128 said:

> "There can be no doubt that the court committed error in refusing to permit Mrs. Leep to testify. The violation by a witness of an order excluding witnesses from the courtroom does not make such witness incompetent nor furnish grounds for a refusal to permit him to testify. The proper recourse is contempt proceedings against the witness."

We agree with the California court that the proper recourse against a witness who violates an order excluding witnesses should be by contempt proceeding for such conduct. Also, that such conduct of a witness affects his credibility, but it should not be used to disqualify him as a witness for a defendant in a criminal case because as we stated above an accused has the constitutional right to have witnesses testify in his favor.

## II. Hearsay Rule

The State alleges that even if the trial court erred in excluding the testimony of defense witness Conchee, the error was harmless because the evidence to be offered by his testimony was hearsay and therefore inadmissible.

Defendant in his offer of proof stated that the witness Conchee would testify that "... he is an acquaintance of Mr. Eugene Kim, the driver of the car in which Mr. Leong was riding at the time of the arrest in question; that Mr.

Eugene Kim told Mr. Conchee that Eugene Kim threw or flicked the narcotic out the window and that Mr. Leong was sitting; that Eugene Kim said that he would not come down here and testify for Mr. Leong for fear of incriminating himself."

The general basis for excluding hearsay evidence is because it lacks the sanction of an oath and the test of cross-examination, *Hines* v. *Commonwealth*, 136 Va. 728, 117 S.E. 843 (1923); however, where there is a high degree of trustworthiness, hearsay evidence is admissible. *Hew* v. *Aruda*, 51 Haw. 451, 462 P.2d 476 (1969), *People* v. *Spriggs*, 60 Cal. 2d 868, 389 P.2d 377 (1964); see 5 Wigmore, *Evidence* §§ 1420-22 (3d ed. 1940).

A declaration against interest is a well-recognized exception to the hearsay rule. The requirements for this exception are that the declarant be unavailable; that he had knowledge of the facts concerning the declaration; that it was a declaration against his interest; and that there was no motive to falsify. *Clark & Jones, Inc.* v. *American Mut. Liability Ins. Co.*, 112 F. Supp. 889 (E.D. Tenn. 1953); *G. M. McKelvey Co.* v. *General Casualty Co. of America*, 166 Ohio St. 401, 142 N.E.2d 854 (1957). The rationale for the admission of a declaration against interest is that the declaration is trustworthy and unlikely to be false because one will not make false statements against his interest. *People* v. *Spriggs*, 60 Cal. 2d 868, 389 P.2d 377, 381 (1964), *Hines* v. *Commonwealth*, 136 Va. 728, 117 S.E. 843 (1923).

A majority of the jurisdictions have held that only a declaration against proprietary or pecuniary interest is admissible as an exception to the hearsay rule. There is no sound basis for such limitation or for such "barbarous doctrine" as termed by Wigmore.[3] A declaration against penal interest is no less trustworthy because criminal

---

[3] 5 Wigmore, *Evidence* § 1477 (3d ed. 1940).

implication is certainly as damaging, if not more, as one's declaration against his pecuniary or proprietary interest; and thus it will act as a stimulus to telling the truth, or as a deterrent to falsification.

In *People* v. *Spriggs,* 60 Cal. 2d 868, 389 P.2d 377 (1964), the Supreme Court of California at page 381 said:

> "When hearsay evidence is admitted it is usually because it has a high degree of trustworthiness. [Citations omitted.] Thus, declarations against pecuniary or proprietary interest are admitted because they are unlikely to be false. [Citation omitted.] A declaration against penal interest is no less trustworthy.... [A] person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest. Moreover, since the conviction of a crime ordinarily entails economic loss, the traditional concept of a 'pecuniary interest' could logically include one's 'penal interest.' "

Thus, providing the other requirements of the declaration against interest exception to the hearsay rule will be met, defense witness Edmund Conchee should be permitted to testify as to the statement made by Eugene Kim.

The other points relied on appeal are without merit. Reversed and remanded for a new trial.

*Charles H. Silva, Jr. (Ernest Y. Yamane* with him on the brief, *Bicoy & Yamane* of counsel) for defendant-appellant.

*Stanley Kanetake,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney and *Dennis A. Ing,* Deputy Prosecuting Attorney on the brief) for plaintiff-appellee.