PEOPLE v ERNEST EDWARDS

Docket No. 54995. Argued September 12, 1974 (Calendar No. 12).—
Decided June 3, 1976.

Ernest Edwards was convicted by a jury in the Saginaw Circuit
Court, Fred J. Borchard, J., of second-degree murder. The Court
of Appeals, R. B. Burns, P. J., and T. M. Burns, J. (Peterson, J.,
dissenting), affirmed and remanded for resentencing (Docket
No. 13732). The Supreme Court granted leave to review defend-
ant's contention that an exception to the hearsay rule for
declarations made against the penal interest of the declarant
should be recognized. *Held:*

1. A declaration against penal interest is admissible as an
exception to the hearsay rule. While courts uniformly recognize
the exception to the hearsay rule for declarations against
pecuniary or proprietary interest, they have generally refused
to admit declarations against penal interest. The cases offer no
reasoned justification for excluding declarations against penal
interest beyond the simple statement that they are hearsay.

2. The trier of fact is free to decide whether to believe the
testimony and what weight to accord it and the motive of the
defendant to present false evidence to avoid conviction may be
considered after hearing the proffered testimony. A preliminary
showing of trustworthiness is not required. Circumstances sur-
rounding the making or reporting of the statement go to the
weight to be given the testimony.

Justice Coleman, with whom Justice Fitzgerald concurred,
dissented: Declarations against penal interest of a deceased
person are admissible as evidence under circumstances showing
a necessity for resorting to hearsay for proof, and a circumstan-
tial probability of trustworthiness of the declaration, such as
corroboration. The trustworthiness of the confession in this

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 29 Am Jur 2d, Evidence § 493.
[2] 30 Am Jur 2d, Evidence § 1080 *et seq.*
[3] 29 Am Jur 2d, Evidence § 500.
  81 Am Jur 2d, Witnesses § 658.
Credibility of witness giving uncontradicted testimony as matter for
  court or jury. 62 ALR2d 1191.

case was not supported by the other credible evidence, and it was not error to exclude the testimony about it; the defendant had a fair trial under circumstances which did not require that the statement be admitted.

Reversed and remanded for a new trial.

47 Mich App 307; 209 NW2d 527 (1973) reversed.

OPINION OF THE COURT

1. EVIDENCE—HEARSAY—ADMISSIBILITY—DECLARATION AGAINST PE-
   NAL INTEREST.

   A declaration against penal interest is admissible as a common-law exception to the hearsay rule, and a preliminary showing of trustworthiness is not required; a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest.

2. EVIDENCE—HEARSAY—CREDIBILITY—QUESTION OF FACT.

   Circumstances surrounding the making or reporting of a third-party statement go to the weight to be given the testimony, not its admissibility; the adversary system reposes judgment of the credibility of all witnesses in the jury.

3. EVIDENCE—CREDIBILITY—QUESTION OF FACT.

   It is for the jury as trier of fact to decide which of two impeached witnesses to believe.

DISSENTING OPINION

COLEMAN and FITZGERALD, JJ.

4. EVIDENCE—HEARSAY—ADMISSIBILITY—DECLARATION AGAINST PE-
   NAL INTEREST.

   *A declaration against penal interest is admissible as a common-law exception to the hearsay rule under circumstances evincing reliability of the declaration, and a necessity for resorting to hearsay.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Daniel R. Connell,* Chief Appellate Attorney, for the people.

*Frank R. Vargas,* for defendant on appeal.

LEVIN, J. Ernest Edwards was jury-convicted of

second-degree murder for the fatal shooting of Robert Stevens.

At trial, one of Edwards' witnesses sought to testify that Chester Blake, then deceased, had told him that he (Blake) killed Stevens. The trial court sustained the prosecutor's objection and asked the jury to disregard the testimony.

The Court of Appeals affirmed the conviction.[1]

We hold that the proffered hearsay evidence was admissible as a declaration against penal interest and reverse and remand for a new trial.

I

Harold Napora and Stevens (the victim) spent the evening of April 23, 1971 traveling from bar to bar in search of a prostitute.

They met defendant Edwards who said he could find them a woman for $10. Edwards introduced them to Betty King. Napora, Stevens and King, however, were unable to agree on a price.

Napora testified that when it became apparent no agreement would be reached, he and Stevens started to drive away. Edwards pulled a gun and said, "This is a stickup. Give me your money and don't take off."[2] As Napora drove away, he heard two shots fired.

Stevens had been sitting on the passenger's side of Napora's truck. The door was partly open as they started to drive away and Stevens told Napora he thought he "got grazed a little bit". They examined his side at Stevens' home. Napora testi-

---

[1] *People v Ernest Edwards,* 47 Mich App 307; 209 NW2d 527 (1973).

[2] On April 24, 1971, Napora told the sheriff's department that Stevens had been shot when two men attempted to rob them as they left a bar. At trial, Napora explained that he lied to the sheriff's department because he was married and he did not want his wife to know that he and Stevens were looking for a prostitute.

fied that they saw only a little red spot which did not look like a hole. Stevens was not bleeding and declined Napora's offer of a ride to the hospital. Napora, not knowing Stevens had been shot, went home.[3]

Stevens bled to death as a result of a gunshot wound of the liver. A .22-caliber bullet was removed from his body.

Edwards testified that after he introduced King to Napora and Stevens, he went to Skip's After Hour. He denied having a gun or firing any shots at Napora or Stevens.[4] He said that Chester Blake came into Skip's trying to pawn a .22-caliber pistol for $10. Edwards said he gave Blake $10 for the gun, took it home and sold it to David Benton the next day. Stevens was killed with a .22.[5]

King's testimony tended to corroborate that of Edwards. She said that after she, Stevens and Napora failed to reach an agreement, "some shooting started". She said she saw Chester Blake standing nearby with a gun.[6]

---

[3] The next day, Napora and his wife went to Stevens' home. When no one answered the door, Napora looked through the kitchen window and saw Stevens on the floor. He called Stevens' brother and notified the police.

[4] On May 6, 1971, Edwards told the police that he thought Stevens had "a knife or something" in his pocket, so he pulled a gun to frighten him; King then grabbed his arm and the gun fired twice.

At trial, he testified that he lied to the police because he did not want to be charged with murder and King had told him he would get off if he told the police he accidentally shot Stevens.

[5] On cross-examination, Napora testified that he had a .22-caliber gun which belonged to Stevens but that he broke it up and threw it into a gravel pit near Mt. Pleasant the day after Stevens was found dead. The police attempted but were unable to recover the gun. A ballistics expert testified that the .22-caliber bullet removed from Stevens' body had been fired by a gun which was recovered by the police following a traffic accident involving David Benton five days after Stevens was shot.

[6] On May 6, 1971, King told the police that Edwards had shot Stevens, but it was an accident.

At trial, King testified that she had lied to the police because

## II

John Longuemire sought to testify that Chester Blake, then deceased, had told him[7] that he (Blake) killed Stevens. The people's objection was sustained and the jury instructed to disregard Longuemire's testimony.[8]

The general rule is that hearsay, an out-of-court statement offered as proof of the matter asserted, is inadmissible at trial.[9]

That rule is riddled with exceptions.

One exception is for declarations against the pecuniary or proprietary interest of the declarant.[10] Such statements are admissible as proof of the matter asserted if the declarant is unavailable

Chester Blake and his brother had threatened to kill her if she told the truth. She also said Chester Blake paid her not to tell "everything" to the police.

[7] Longuemire testified that he last talked with Blake "probably a week or two before he got killed". He also said that he had a conversation with Blake in "the beginning of May" or "[r]ight before May". Stevens was shot on April 23. The trial was in November.

[8] *"Q:* Do you know who killed or shot a man on 5th Street between Federal and Lapeer on the night of April the 23[rd], 1971?

*"A:* Yes, I do.

*"Q:* And who did that?

*"A:* Chester Blake.

*"Q:* Chester Junior?

*"A:* Yes.

*"Q:* And how do you know that Chester Junior did that?

*"A:* Well, he told me.

*"Mr. Oberschmidt [Assistant Prosecuting Attorney]:* I'm going to object to these answers, your Honor.

*"Mr. Schwartzly [Defense Counsel]:* Your Honor, this is a direct admission from a man who has killed a man and it's admissible evidence as a declaration against interest just the same as if my client admitted it.

*"The Court:* I'm going to sustain the objection and ask the jury to disregard it."

There was other evidence that Chester Blake was also known as Chester Junior.

[9] 5 Wigmore on Evidence (Chadbourn Rev), § 1361; McCormick, Evidence (2d ed), §§ 245–246.

[10] 5 Wigmore, *supra,* §§ 1455–1477; McCormick, *supra,* §§ 276–280.

for trial because they are considered inherently reliable. Wigmore states "[t]he basis of the exception is the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect".[11]

While courts uniformly recognize the exception for declarations against pecuniary or proprietary interest, they have generally refused to admit declarations against penal interest.[12]

This distinction, which has been criticized by courts, commentators and code drafters as without basis in law or logic,[13] was first made by the House of Lords in 1844 in the *Sussex Peerage Case*.[14]

Both Wigmore and McCormick state that the House of Lords ignored precedent in holding that a declaration against penal interest was not within the declaration against interest exception to the hearsay rule.[15] Wigmore characterizes the case as "a backward step", "an arbitrary limit" that "was

---

[11] 5 Wigmore, *supra,* § 1457, p 329.

[12] 5 Wigmore, *supra,* §§ 1476–1477; McCormick, *supra,* § 278; 2 Wharton, Criminal Evidence (13th ed), § 270; Anno: *Admissibility in favor of accused in criminal case of extrajudicial confession by stranger,* 35 ALR 441, supplemented by Anno: *Admissibility in favor of accused in criminal case of extrajudicial confession by stranger,* 48 ALR 348.

[13] "[A]n archaic rule of evidence * * * characterized by experts as an historical accident without reason to support it." *Alexander v State,* 84 Nev 737, 743; 449 P2d 153, 157 (1968) (dissenting opinion of Thompson, C. J.).

*See, e.g., People v Spriggs,* 60 Cal 2d 868; 36 Cal Rptr 841; 389 P2d 377 (1964); *State v Leong,* 51 Hawaii 581; 465 P2d 560 (1970); *People v Brown,* 26 NY2d 88; 308 NYS2d 825; 257 NE2d 16 (1970); *Sutter v Easterly,* 354 Mo 282; 189 SW2d 284; 162 ALR 437 (1945); *Donnelly v United States,* 228 US 243, 277; 33 S Ct 449; 57 L Ed 820 (1913) (Holmes, J., dissenting); *United States v Annunziato,* 293 F2d 373 (CA 2, 1961); 5 Wigmore, *supra,* §§ 1476–1477; McCormick, *supra,* § 278; Uniform Rules of Evidence 1953, 63(10); Uniform Rules of Evidence 1974, 804(b)(3); ALI Model Code of Evidence 1942, 509.

[14] 11 Clark & F 85; 8 Eng Rep 1034; 8 Jur 793 (1844).

[15] McCormick, *supra,* § 278; 5 Wigmore, *supra,* § 1476, p 351.

plainly a novelty at the time of its inception"[16] and that would perhaps in England "no longer be observed".[17] He labels the decision a "barbarous doctrine which would refuse to let an innocent accused vindicate himself".

"It is therefore not too late to retrace our steps, and to discard this barbarous doctrine, which would refuse to let an innocent accused vindicate himself even by producing to the tribunal a perfectly authenticated written confession, made on the very gallows, by the true culprit now beyond the reach of justice. Those who watched (in 1899) with self-righteous indignation the course of proceedings in Captain Dreyfus' trial should remember that, if that trial had occurred in our own courts, the spectacle would have been no less shameful if we, following our own supposed precedents, had refused to admit what the French court never for a moment hesitated to admit—the authenticated confession of the absconded Major Esterhazy, avowing himself the guilty author of the treason there charged, and now known beyond a doubt to have been the real traitor."[18]

Justice Holmes severely criticized recognition of the distinction by the United States Supreme Court in his oft-quoted dissent in *Donnelly v United States,* 228 US 243, 277–278; 33 S Ct 449; 57 L Ed 820 (1913):

---

[16] 5 Wigmore, *supra,* § 1476, p 351.

[17] 5 Wigmore, *supra,* § 1476, p 358.

*See* Anno: *Admissibility, as against interest, of declaration of commission of criminal act,* 162 ALR 446.

[18] 5 Wigmore, *supra,* § 1477, p 360.

"The only practical consequences of this unreasoning limitation are shocking to the sense of justice; for in its commonest application it requires, in a criminal trial, the rejection of a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has avowed himself to be the true culprit. The absurdity and wrong of rejecting indiscriminately all such evidence is patent * * * ." 5 Wigmore, *supra,* § 1477, p 359.

"The confession of Joe Dick, since deceased, that he committed the murder for which the plaintiff in error was tried, coupled with circumstances pointing to its truth, would have a very strong tendency to make any one outside of a court of justice believe that Donnelly did not commit the crime. I say this, of course, on the supposition that it should be proved that the confession really was made, and that there was no ground for connecting Donnelly with Dick.—The rules of evidence in the main are based on experience, logic and common sense, less hampered by history than some parts of the substantive law. There is no decision by this court against the admissibility of such a confession; the English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder, it is far more calculated to convince than dying declarations, which would be let in to hang a man * * * ; and when we surround the accused with so many safeguards, some of which seem to me excessive, I think we ought to give him the benefit of a fact that, if proved, commonly would have such weight. The history of the law and the arguments against the English doctrine are so well and fully stated by Mr. Wigmore that there is no need to set them forth at greater length."

And Judge Friendly in *United States v Annunziato,* 293 F2d 373, 378 (CA 2, 1961), felt bound by but expressly disapproved what he characterized as "the rather indefensible limitation" on the declaration against interest exception to the hearsay rule.

### III

A number of state courts[19] have declined to

[19] New Jersey and Wisconsin have enacted statutes which provide for the admission of declarations against penal interest. NJR Evid 1960, 63.10; Wis R Evid 1974, 908.045(4).

California enacted a similar statute after the California Supreme

follow the English rule and have held declarations against penal interest admissible as a common-law exception to the hearsay rule.[20]

In *Hines v Commonwealth,* 136 Va 728, 740; 117 SE 843; 35 ALR 431, 439–440 (1923), a witness for the defense was permitted to testify as to a confession made by a then deceased person. The Virginia Supreme Court of Appeals stated:

"[W]e think it must be conceded that many of the courts and text-writers who stand for the doctrine [that declarations against penal interest are inadmissible] have felt called upon to apologize for their position, or, if not to apologize, to undertake to explain to the lay mind that, although a contrary doctrine would appear to be demanded by common sense and natural justice, nevertheless a trained professional eye could see the matter in a different light."

In *Newberry v Commonwealth,* 191 Va 445; 61 SE2d 318 (1950), the same Court held that a third person's written confession was properly admitted where he claimed his Fifth Amendment right against self-incrimination and refused to testify.

The Supreme Court of California, in *People v*

Court ruled that under the common law declarations against penal interest were admissible. *See People v Spriggs, supra,* fn 13.

Under the new Federal Rules of Evidence declarations against interest, whether pecuniary or penal, are admissible. The statute further provides that declarations against penal interest which tend to exculpate the accused are admissible where "corroborating circumstances clearly indicate the trustworthiness of the statement". FR Evid 804(b)(3).

Earlier proposals for codification of the law of evidence rejected exclusion of declarations against penal interest. *See* Uniform Rules of Evidence 1953, 63(10) and ALI Model Code of Evidence 1942, 509(1).

[20] The Supreme Court of Pennsylvania has held that declarations against penal interest which are reliable and which tend to exculpate the defendant are admissible as a matter of constitutional right—the due-process right to present a defense. *Commonwealth v Nash,* 457 Pa 296; 324 A2d 344 (1974).

*Spriggs,* 60 Cal 2d 868; 36 Cal Rptr 841; 389 P2d
377, 381 (1964), held admissible statements of de-
fendant's companion that the heroin found by
police was hers. The Court found declarations
against penal interest "no less trustworthy" than
declarations against pecuniary or proprietary in-
terest: "A person's interest against being crimi-
nally implicated gives reasonable assurance of the
veracity of his statement made against that inter-
est".

Additionally, the California Court stated that
traditional analysis could be relied on to admit
declarations against penal interest since conviction
of a crime "ordinarily entails economic loss".[21]

The Supreme Court of Hawaii in *State v Leong,*
51 Hawaii 581, 587; 465 P2d 560, 564 (1970), citing
*People v Spriggs, supra,* agreed that there is "no
sound basis" for excluding declarations against
penal interest. They are "no less trustworthy"
than other declarations against interest and the
potential criminal liability "will act as a stimulus
to telling the truth, or as a deterrent to falsifica-
tion".[22]

---

[21] Similar analysis—that it is against a person's pecuniary interest
to confess to a crime—has been used by other courts to hold admissi-
ble declarations against penal interest. *See, e.g., Weber v Chicago, R I
& P R Co,* 175 Iowa 358; 151 NW 852, 861, 864–865 (1915); *G M
McKelvey Co v General Casualty Co,* 166 Ohio 401; 142 NE2d 854
(1957); *Aetna Life Insurance Co v Strauch,* 179 Okla 617; 67 P2d 452,
455 (1937).

[22] "A declaration against penal interest is no less trustworthy
because criminal implication is certainly as damaging, if not more, as
one's declaration against his pecuniary or proprietary interest; and
thus it will act as a stimulus to telling the truth, or as a deterrent to
falsification." *State v Leong,* fn 13 *supra.*

The California Supreme Court similarly stated:

"A declaration against penal interest is no less trustworthy. * * *
[A] person's interest against being criminally implicated gives reason-
able assurance of the veracity of his statement made against that
interest. Moreover, since the conviction of a crime ordinarily entails
economic loss, the traditional concept of a 'pecuniary interest' could
logically include one's 'penal interest.'" *People v Spriggs,* fn13 *supra.*

The New York Court of Appeals, in adopting "a more rational view of admissibility of declarations against interest", stated that "the distinction which would authorize a court to receive proof that a man admitted he never had title to an Elgin watch, but not to receive proof that he had admitted striking Jones over the head with a club, assuming equal relevancy of both statements, does not readily withstand analysis".[23]

The Supreme Court of Missouri in 1945 adopted the view that declarations against penal as well as proprietary or pecuniary interest were admissible. In *Sutter v Easterly,* 354 Mo 282, 296; 189 SW2d 284, 290 (1945), the Court, persuaded by Wigmore's analysis, refused to blindly "adher[e] to the illogical English rule [the *Sussex Peerage Case]*".[24]

Similarly, the Supreme Courts of Idaho[25] and Illinois,[26] the Maryland Court of Appeals,[27] and appellate courts of Arizona,[28] Texas,[29] and New

[23] *People v Brown,* 26 NY2d 88, 91; 308 NYS2d 825, 826–827; 257 NE2d 16 (1970).

[24] *See, also, Moore v Metropolitan Life Insurance Co,* 237 SW2d 210 (Mo App, 1951).

[25] In *State v Larsen,* 91 Idaho 42, 49; 415 P2d 685, 692 (1966), the Supreme Court of Idaho held that "third-party confessions, made out of court, are admissible only when there is other substantial evidence which tends to show clearly that the declarant is in fact the person guilty of the crime for which the accused is on trial".

[26] *People v Lettrich,* 413 Ill 172; 108 NE2d 488 (1952). A third-party confession to murder was held admissible where the only evidence of defendant's guilt was his repudiated confession.

[27] *Brady v State,* 226 Md 422; 174 A2d 167 (1961); *Dyson v State,* 238 Md 398, 407; 209 A2d 609, 614 (1965):

"[T]he later cases have established that a confession by one other than the defendant, that he committed the crime in question, should be received and considered by the trier of the guilt of the accused, unless it is clearly collusive, frivolous or otherwise obviously untrustworthy".

[28] *Deike v Great Atlantic & Pacific Tea Co,* 3 Ariz App 430, 432, 433; 415 P2d 145, 147–148 (1966).

"Penal interest is certainly as important to a person as pecuniary or proprietary interest and would appear to be an equal stimuli to telling the truth or a deterrent to false statements."

The Court held that the statement at issue in that case was

Jersey[30] have held hearsay declarations against penal interest admissible in particular circumstances.[31]

## IV

The cases generally offer no reasoned justification for excluding declarations against penal interest beyond the simple statement that they are hearsay. It has been suggested that the underlying rationale is fear that the admission of such evidence would encourage fabrication.[32]

---

inadmissible because there was no showing that it was "against the declarant's interest—pecuniary, proprietary, penal or otherwise."

[29] *Cameron v State,* 153 Tex Cr 29; 217 SW2d 23 (1949). Where the case against the defendant is solely circumstantial, the guilt of a third party is inconsistent with the guilt of defendant and the facts show the third party was so situated that he might have committed the crime, a third-party confession is admissible.

[30] *State v Sejuelas,* 94 NJ Super 576; 229 A2d 659 (1967).

[31] The Supreme Courts of Nevada and Mississippi have recently reconsidered the question of the admissibility of declarations against penal interest and adhered to the old distinction, declining to adopt a rule of even limited admissibility. *See Alexander v State,* 84 Nev 737; 449 P2d 153 (1968) (Thompson, C. J., dissenting). The Mississippi decision, *Chambers v State,* 252 So 2d 217 (Miss, 1971), was reversed by the United States Supreme Court which held that Chambers had been denied due process of law where he was precluded from introducing exculpatory declarations against penal interest *(see* fn 44) and was prevented from cross-examining a witness under the state's "voucher" rule. *Chambers v Mississippi,* 401 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

The Supreme Court of Wisconsin also declined to adopt a common-law exception for declarations against penal interest, but in so doing the Court noted that such declarations were admissible under the Wisconsin Rules of Evidence, patterned after the ALI Model Code of Evidence, which became effective January 1, 1974. *See State v Sharlow,* 61 Wis 2d 388; 212 NW2d 591 (1973), and *State v Johnson,* 60 Wis 2d 334; 210 NW2d 735 (1973).

[32] McCormick states that the practice of excluding declarations against penal interest "certainly cannot be justified on the ground that an acknowledgment of facts rendering one liable to criminal punishment is less trustworthy than an acknowledgment of a debt. The motivation for the exclusion is probably a different one, namely, the fear of opening a door to a flood of perjured witnesses falsely testifying to confessions that were never made." He rejects this

No one today would contend that because a criminal defendant has a lot "at stake" there is a risk of fabrication and he cannot take the stand or, before he can testify, a judge must first determine his credibility. We leave to the trier of fact whether to believe the defendant's testimony.

Yet the same justification—the motive of the defendant to present false evidence to avoid conviction—is suggested as an appropriate reason for excluding exculpatory evidence and for allowing judges to rule on the credibility of defense witnesses.

In ruling on the admissibility of evidence, a judge does not make a preliminary determination regarding the truth or falsity of the proffered evidence or the weight the trier of fact should accord it.

The Supreme Courts of California[33] and Hawaii,[34] the New York Court of Appeals,[35] and the Virginia Supreme Court of Appeals,[36] in holding declarations against penal interest admissible, declared that credibility is for the trier of fact and is not an appropriate consideration where the question concerns the admissibility of evidence. The Virginia Court recognized that witnesses may lie and alleged confessions may "be foisted on the courts and juries, but so may alleged admissions in civil cases, as, for example, regarding the location of a corner tree or other real estate controversy. As to

---

possibility-of-fabrication justification for excluding declarations against penal interest, McCormick, *supra,* § 278, p 674.

*See* fn 22 and accompanying text.

[33] *People v Spriggs,* fn 13, *supra.*

[34] *State v Leong,* fn 13, *supra.*

[35] *People v Brown,* fn 13, *supra.*

[36] *Hines v Commonwealth,* 136 Va 728; 117 SE 843; 35 ALR 431 (1923).

both classes of admissions they must be admitted, if at all, because the evidence itself is important to the ends of justice, and because it may be assumed that no man will speak falsely to his own hurt. The truth of the admission itself, and the credibility of the witness who undertakes to repeat the admission, must, like the truthfulness of all other testimony, address itself to and be settled by the jury."[37]

Wigmore similarly rejects the "possibility-of-procuring-fabricated-testimony" argument, stating that it "would be a good argument against admitting any witnesses at all, for it is notorious that some witnesses will lie and that it is difficult to avoid being deceived by their lies." He concludes that "any rule which hampers an honest man in exonerating himself is a bad rule, even if it also hampers a villain in falsely passing for an innocent".[38]

## V

The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, on the recommendation of the Advisory Committee on Rules of Evidence, proposed that an exception to the hearsay rule be recognized for declarations against penal as well as pecuniary or proprietary interest. The committee noted that "[q]uestions of possible fabrication are better trusted to the competence of juries than made the subject of attempted treatment by rule". Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates (March, 1969), p 214.

[37] *Hines v Commonwealth, supra,* 745.

[38] Wigmore, *supra,* § 1477, p 359.

The recommendation was not accepted. The rule which was enacted recognizes an exception to the hearsay rule for declarations against penal interest, but where such declarations are offered to exculpate the accused they are not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement".[39]

The nature of the "corroborating circumstances" which would "clearly indicate the trustworthiness" of a declaration against penal interest is neither defined in the rules nor discussed in the notes.[40] It appears from the editorial comments to the rules, however, that an important factor in the decision to require corroboration where defendants seek to introduce exculpatory declarations against penal interest was the fear of fabricated evidence, both perjured testimony by witnesses and false confessions of crime by declarants.[41]

We are of the opinion that the circumstances surrounding the making or reporting of a third-party statement, whether "assuring reliability", "indicating trustworthiness", or "rendering totally incredible", go to the weight to be given the testimony, not its admissibility. For a judge to exclude evidence because he does not believe it has been described as "altogether atypical, extraordinary * * * ."[42] "[O]ur adversary system reposes judgment of the credibility of all witnesses

---

[39] FR Evid 804(b)(3), Pub L No. 93-595, art 8 (Jan 2, 1975).

[40] *See* Note, *Declarations Against Penal Interest: What Must be Corroborated Under the Newly Enacted Federal Rule of Evidence, Rule 804(b)(3),* 9 Valparaiso L Rev 421 (1975).

[41] *See* Notes of Advisory Committee on Proposed Rules, 804(b)(3).

[42] Chadbourn, *Bentham and the Hearsay Rule—A Benthamic View of Rule 63(4)(c) of the Uniform Rules of Evidence,* 75 Harv L Rev 932, 947 (1962), cited in Notes of Advisory Committee on Rules of Evidence to Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Rules of Evidence for the District Courts and Magistrates (March, 1969), p 155.

in the jury." *Brooks v Tennessee,* 406 US 605, 611; 92 S Ct 1891; 32 L Ed 2d 358 (1972). Cross-examination of the witness, penalties for perjury, and the good sense of the trier of fact to whom all other questions of possible fabrication are entrusted are adequate safeguards against false testimony.

We reject the apparent double standard[43] of the compromise that a preliminary showing of trustworthiness is required only where the defendant offers a declaration against penal interest to exculpate himself. Such a rule is based on an assumption that criminal defendants are more likely to use perjured testimony. We refuse to predicate a rule of law upon such an assumption.

---

[43] A police officer or an informer can testify to extrajudicial statements of the defendant without a foundation showing circumstances indicating reliability or trustworthiness.

Nor is there any requirement of a showing of trustworthiness where the people offer hearsay statements of alleged co-conspirators or codefendants, usually reported by undercover agents or informants. The predicate of admissibility—proof by independent evidence that a crime was committed and that defendant was connected to it—does not require the people to show that the hearsay statement is itself trustworthy.

Police officers are engaged in what has been called the "often competitive enterprise of ferreting out crime". *Johnson v United States,* 333 US 10, 14; 68 S Ct 367; 92 L Ed 436 (1948).

Undercover agents and informers are professional dissemblers. Their assignment is to take on a false identity and so convincingly act a lie that they gain the confidence of alleged drug dealers, fences and murderers. Frequently their very lives depend upon their ability to play a particular role.

These same persons, skilled in the art of dissembling, then come into court and repeat statements allegedly made to them which inculpate defendants. Often they are cooperating with the authorities in an effort to win concessions regarding charges pending against them; many are paid; others "cooperate" with the police because they are morally outraged by the conduct defendant is alleged to have engaged in. Leniency, pay and vindication of moral convictions could well be related to success in the particular assignment; there is a motive for the agent or informant to make the case he or she knows the authorities want. To concede that a defendant also has a motive to make his case does not justify a rule limiting admissibility of certain exculpatory evidence only upon a special showing of reliability or trustworthiness.

We parenthetically note that King's testimony tended to "corroborate" the excluded hearsay statement. If it be said that before the trial she gave an inconsistent statement (fn 6), so had Napora (fn 2), the principal witness for the people; it is for the jury as trier of fact to decide which of two impeached witnesses to believe.

## VI

Because we hold that a declaration against penal interest is admissible as a common-law exception to the hearsay rule, it is not necessary to address the constitutional question presented in this case. See *Chambers v Mississippi,* 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973), where the United States Supreme Court held that under certain circumstances exclusion of hearsay testimony critical to the defense may constitute a denial of due process.[44] See also *Commonwealth v Nash,* 457 Pa 296; 324 A2d 344 (1974), where the Supreme Court of Pennsylvania held that under certain circumstances declarations against penal interest which tend to exculpate the defendant are admissible as part of the due-process right to present a defense.

---

[44] The Court held that it was a denial of due process to exclude hearsay statements against penal interest which "bore persuasive assurances of trustworthiness" and were "critical to Chambers' defense". Each statement "was made spontaneously to a close acquaintance shortly after the murder had occurred", "was corroborated by some other evidence in the case", "was in a very real sense self-incriminatory and unquestionably against interest". Also, the declarant "was present in the courtroom and had been under oath".

The Court noted that the advisory committee proposal for the new Federal Rules of Evidence would no longer require exclusion and said that while the fabrication rationale had "been the subject of considerable scholarly criticism, we need not decide in this case whether, under other circumstances, it might serve some valid state purpose of excluding untrustworthy testimony". *Chambers v Mississippi, supra,* pp 299–302.

Reversed and remanded for a new trial.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

COLEMAN, J. *(dissenting)*. Belated testimony concerning an alleged confession of recently deceased Chester Blake was not of trustworthy calibre and therefore was properly excluded. Under the facts of this case, the judge did not abuse his discretion by denying admissibility of an "admission against penal interest". The conviction should be affirmed.

We agree that alleged confessions of a deceased person should be admitted under circumstances evincing reliability, but would guard against an absolute rule such as advocated by Justice LEVIN which could allow one friendly to defendant to place uncorroborated words of confession into the mouth of any safely departed person.

Defendant was convicted of murdering Robert Stevens. Stevens and a friend, Harold Napora, had been looking for women. They met a man identified as Edwards who offered to get them one. He returned with Betty King who refused employment.

Betty King made a statement before trial. She said Edwards (known to her as Cutie) had fired the shots:

"*Q:* Was there any conversation between you and Cutie after this shooting took place?

"*A:* He told me to be quiet about it. He said, 'Betty, you are going to talk? If you tell it, you going to be involved, too. Don't you tell it.' And I was scared because I was there. That's why I was afraid."

Nevertheless, at trial, Betty King said she had seen the shooting but that Chester Blake (known to her as Chester Junior) had done the shooting. She testified that Chester Blake had paid her to lie in the pretrial statement.

During the investigation, Betty King had identified a picture of Ernest Edwards as being the man who shot Stevens. She now testified that the police had badgered her into it.

Although Blake died before the preliminary examination, she did not identify him then because they were very close, she said. Earlier, however, she had said she did not "know Chester Junior, really, well, you know".

Defendant was apprehended and identified by Napora during a lineup. Edwards then made a statement. He said that after Betty King refused the two men, Stevens started cursing:

"And so—I don't know. When he was going to get out of the truck, I pulled the gun out. I didn't point it at him. When he got back in, he had his hand in his sweater pocket, in his left sweater pocket, and I pointed the gun at him then and that's when the truck started to pull off and Betty, she hit my hand, tried to grab the gun out of my hand to stop me from shooting and the gun went off and it scared me and I shot again."

Edwards said he got the gun from Irvin Johnson, who had bought it from Chester Blake.

However, during the trial, defendant testified and denied shooting Stevens. He then said that after leaving Napora and Stevens, he had bought the pistol not from Irvin Johnson, but from Chester Blake. He said the pretrial statement was a confused attempt to avoid prosecution for murder.

Howard Edwards, defendant's brother, said he was in Skip's Crap House on April 23rd. He said

Chester Blake came in about the time the shooting occurred and pawned a gun to Ernest for $10. Howard and Irvin Johnson said Blake had first tried to sell the pistol to Johnson. The gun had by this time been identified as the murder weapon.

The next defense witness, John Longuemire, said he was "pretty close" to and a "very good friend" of Chester Blake, who had died before the Edwards' trial. He also knew defendant.

John Longuemire had been in the jail where defendant was awaiting trial. They talked about the murder, he said. Although Chester Blake had supposedly confessed his guilt to Longuemire,[1] it was not reported to the police or mentioned to the defendant until Blake was dead. Longuemire supposedly wrote a statement at defendant's request while they were in jail, but this statement was never given to the police.

Longuemire's uncorroborated[2] testimony about Blake's alleged confession was properly rejected as hearsay and becomes the principal issue in controversy. All of the other testimony was admitted for jury consideration.

It is agreed that declarations against penal interest may be admitted despite being hearsay. However, Justice LEVIN fashions Wigmore's position opposing the automatic exclusion of those statements into a rule requiring admission of all

---

[1] When asked at trial whether he knew who "killed or shot a man on 5th Street between Federal and Lapeer on the night of April the 23[rd], 1971," Longuemire said:

"*A.* Yes, I do.
"*Q.* And who did that?
"*A.* Chester Blake.
"*Q.* Chester Junior?
"*A.* Yes.
"*Q.* And how do you know that Chester Junior did that?
"*A.* Well, he told me."

[2] Compare *Hines v Commonwealth,* 136 Va 728; 117 SE 843 (1923).

such statements. The testimony should neither be rejected nor admitted indiscriminately. Statements against penal interest should be admitted if two criteria suggested by Wigmore are met: "first, a necessity for resorting to hearsay * * * and, secondly, a circumstantial probability of trustworthiness", such as corroboration. 5 Wigmore, § 1455, p 324.

Under this test, there was no error in rejecting John Longuemire's testimony concerning the alleged confession.[3] There was no corroboration of the confession. There was no showing that the circumstances of the confession made it trustworthy.

The defense was that Chester Blake had shot Stevens. Blake was not identified as the murderer until after he was dead. Defendant had made a confession which he denied at trial. Betty King changed her testimony after the preliminary examination and pretrial statement to incriminate

---

[3] The trial judge's rejection of the testimony was corect under Michigan law. GCR 1963, 601 says "rules of evidence shall be according to the common law except as modified by statute or court rule". In *People v Sartori*, 168 Mich 308; 134 NW 200 (1912), a defense witness had discussed the murder with a man named Sacciucci. This included talk about who did the killing:

"He was then asked for the conversation, which was objected to as hearsay, and the objection was sustained. The ruling was correct. Whether Sacciucci would have answered that he saw some one else commit the murder, or whether, as the record indicates was expected, he would say that Sacciucci told him that he himself committed the murder would be alike hearsay. The acts of Sacciucci having some relation to the crime and tending to show that he committed it instead of Sartori were competent and were admitted; his declarations, statements, and admissions not part of the *res gestae* were not competent." Sacciucci had apparently left the country and was unavailable. *Also see People v Stevens*, 47 Mich 411; 11 NW 220 (1882) (one defendant's confession hearsay as to the other defendant), *People v Aikin*, 66 Mich 460; 33 NW 821 (1887) (statements of deceased victim hearsay), *People v Fritch*, 170 Mich 258; 136 NW 493 (1912) (statement of deceased victim hearsay) and *People v Cutler*, 197 Mich 6; 163 NW 493 (1917) (statements of deceased victim hearsay but harmless as it strengthened defendant's case).

the deceased Blake. Defendant's brother and a friend (who was in jail with defendant) testified that Blake sold the pistol to defendant at a time shortly after the shooting. (Defendant earlier had said that he obtained it from Irvin Johnson who had bought it from Chester Blake.) This testimony was admitted into evidence and argued to the jury as proof of defendant's innocence. The jury weighed this testimony and found it wanting.

As to Longuemire's testimony, the defense did not support the authenticity of Blake's alleged confession.[4] This is not a case where circumstances require that the statement be admitted.[5] We do not have a written confession or a situation where the authorities obtained contradictory confessions.[6] I did not find the "circumstantial possibility of trustworthiness" for admission of the testimony.[7]

It must be stressed that defendant had a fair trial. His witnesses were heard, his defense was argued.

The trial judge properly excluded John Longuemire's testimony about Chester Blake's "confession". It did not have the "circumstantial probability of trustworthiness". The verdict should be affirmed.

FITZGERALD, J., concurred with COLEMAN, J.

---

[4] Compare *Sutter v Easterly*, 354 Mo 282; 189 SW 2d 284 (1945).

[5] Compare *People v Lettrich*, 413 Ill 172; 108 NE 2d 488 (1952).

[6] Compare *Thomas v State*, 186 Md 446; 47 A2d 43 (1946).

[7] See *Deike v Great Atlantic & Pacific Tea Co*, 3 Ariz App 430; 415 P2d 145 (1966).